IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| JACOB KRUEGER and PATRICIA KRUEGER, individually and as the parents and next friends of AA, BB, and CC,<br><br>Plaintiff,<br><br>v.<br><br>CHANNING PETRAK; OSF ST. FRANCIS MEDICAL CENTER; JENNIFER INNESS, in her individual capacity; ALISA COLLINS, in her individual capacity; KIMBERLY TAYLOR, in her individual capacity; LEANDRA TATE, in her individual capacity; RAELYN GALASSI, in her individual capacity; AUSTIN HADDOCK, in his individual capacity; ANITA PARKER, in her individual capacity; ANGELIQUE MAXWELL, in her individual capacity; LINDSAY HORCHARIK, in her individual capacity; and KIMBERLY WILSON, in her individual capacity,<br><br>Defendants. | Case No. 22-cv-1016<br><br>U.S. District Judge Joe McDade<br><br>U.S. Magistrate Judge Jonathan Hawley |

**DEFENDANT OSF'S RESPONSE TO PLAINTIFFS' MOTION FOR DISCOVERY SANCTIONS [ECF #187]**

**I.      Introduction and Overview**

Defendant OSF Healthcare System d/b/a OSF St. Francis Medical Center ("OSF") denies all claims by Plaintiffs against OSF and denies Plaintiffs' mischaracterizations of OSF.  Of note, Plaintiffs admit that the pending motions for summary judgment, which include OSF's motion for summary judgment filed on March 20, 2024, (ECF 82), "are fully briefed and await ruling."  [ECF #183, p. 2, at ¶3].  OSF will show that the document productions it made in this case, and the relevant deposition testimony by its witnesses, support denying Plaintiffs the relief they seek through their discovery sanctions motion.  Moreover, Plaintiffs have not deposed Dr. Joseph Mackey, a physician who reportedly has been employed by someone other than OSF since July 2016, nearly three years before Dr. Mackey wrote the March 2019 progress notes that Plaintiffs

1048558\323445428.v1

contest or dispute. Plaintiffs' motion lacks evidence of bad intent on the part of OSF and fails to specify how Plaintiffs followed up on their ESI concerns upon receipt of OSF documents that were first produced three years ago. Moreover, Plaintiffs' discovery sanctions motion is simply filed too late in light of Defendant OSF's summary judgment motion having been filed and pending since March 2024. *See Hall v. Flannery,* Case No. 3:13-cv-914-SMY-DGW, 2015 U.S. Dist. LEXIS 57454, **12-14 (S.D. Ill. May 1, 2015)(J. Wilkerson).

Plaintiffs also veer away from the record cited in the middle of their memorandum where they identify an October 16, 2017 report by Cincinnati Children's Hospital of suspected abuse or neglect made to the Illinois Department of Children and Family Services ("DCFS"). (ECF #188 at p. 13). In addition to lacking evidence of bad faith on the part of OSF, Plaintiffs also cannot show that they pursued specific categories or items of ESI discovery before filing their motion beyond asking for metadata and audit trails, both of which OSF produced starting in the first quarter of 2022 after being sued. Nor do Plaintiffs detail what efforts they undertook to perform searches of metadata or to make follow-up requests related to audit reports produced to their attention along the lines detailed by OSF's corporate IT witness for specified purposes, Bryan Payne. Plaintiffs also disregard testimony they obtained from OSF witnesses about how Sticky Notes are categorized and used in a limited fashion as items that are not part of a patient's designated medical record. Furthermore, Plaintiffs ignore the testimony they obtained from OSF witnesses about how physicians can and do modify and supplement their medical record documentation and correct it where needed. By presenting a series of speculative assertions and critiques that are incomplete, off the mark, or unsupported, Plaintiffs disclose that they lack the grounds for the relief they seek. Moreover, Plaintiffs do not specify the boundaries or methods for their proposed undisclosed search requests that they seek to demand OSF to conduct on OSF's

Epic software platform. Finally, Plaintiffs nowhere identify what steps they have taken to request additional specific ESI searches that they asked OSF to conduct in discovery before filing their discovery sanctions motion.

## II. OSF's Document Productions of ESI

Through today, OSF has produced over 16,000 pages of medical records, audit trails, and other documents including EPIC training materials to Plaintiffs. The courses of OSF's medical care and admissions included within OSF's document productions are from multiple years and OSF locations. Plaintiffs pull out several pages from the OSF document productions, starting with Dr. Mackey, and demand that the Court accept their speculative readings of various entries without having deposed Dr. Mackey. In similar fashion, Plaintiffs evade deposition testimony that they did obtain from OSF witnesses which contradicts their ESI claims. For example, under the required analysis, the first step is to identify when Plaintiffs sued OSF.

Plaintiffs filed suit against OSF and other parties on January 20, 2022. [ECF #1]. Plaintiffs served OSF with a copy of the Summons and Complaint on or about January 28, 2022. [ECF #2-2]. Starting within a week after Plaintiffs' counsel sent an authorization to release records, OSF made three productions of OSF medical records and audit trail documents to Plaintiffs' counsel. On February 24, 2022, OSF produced to Plaintiffs a set of medical records then received to date. (Ex. 1, 2/24/22 secure file transfer message from OSF's counsel to Plaintiffs' counsel). On March 1, 2022, OSF produced additional medical records to Plaintiffs while also discussing video materials responsive to Plaintiffs' authorization. These medical records included the sleep study report that bears a creation date of 2/25/19 as shown in Plaintiffs' memorandum. (Ex. 2, 3/1/22 secure file transfer message from OSF's counsel to Plaintiffs' counsel); (ECF #188 at p. 19). An admission date of 1/23/2019 that appears in a border column above the sleep study report does not

obscure or change the dates in the report which shows that the sleep study was performed on 2/22/19 as discussed in the report that bears a creation date of 2/25/19. Furthermore, on March 3, 2022, OSF produced audit trail documents to Plaintiffs. (Ex. 3, March 3, 2022 secure file transfer message from OSF's counsel to Plaintiff's counsel).

OSF's document productions also include different versions of 3/24/19 progress notes authored by Dr. Wylie. (Ex. 4, OSF 11820-11827). The cited multiple versions of Dr. Wylie's notes appear in the OSF medical record even though Plaintiffs appear to claim otherwise in spite of OSF witness testimony that all versions by Dr. Wylie of his 3/24/19 progress notes were in the medical record. There was no indication from an IT perspective that a diagnosis had been removed. (Ex. 5, B. Payne dep.at p. 143, line 22 through p. 145, line 19). In addition, Plaintiffs do not identify how OSF medical records produced to them before formal discovery commenced did not inform them of audit trails data and the existence of some progress notes that had multiple versions.

Regarding the note deleted by Dr. Mackey on 2/23/19 at 4 p.m., two of OSF's witnesses testified to their understanding that a deleted electronic medical records are still accessible through the EPIC software. (Ex.5, B. Payne dep. at p. 42, line 11 through p. 42, line 19; and at p. 43, line 22 through p. 44, line 8); (Ex. 6, R. Goetze Bradley dep. at p. 17, line 1 through p. 17, line 11). OSF EPIC trainer Ms. Bradley explained that EPIC training at OSF covers how to make a note as something that should not be looked at, and that deleting a medical record note does not mean that it is really gone and instead means that it is not to be considered for treatment. Moreover, Dr. Mackey provided "error" as the reason that he withdrew his note. (Ex. 6, R. Goetze Bradley dep. at p. 47, line 5 through p. 47, line 9; and at p. 48, line 6 through p. 48, line 16). Furthermore, Plaintiffs fail to show any connection between a February 23, 2019 deletion by Dr. Mackey based

4

on "error" and Plaintiffs serving a Complaint on OSF in late January 2022, almost three years later. In addition, Plaintiffs do not identify any pre-motion communication wherein they sought production of the information Dr. Mackey deleted based as an "error" on February 23, 2019.

Sticky Notes in EPIC are unlike the electronic medical record data in EPIC. In EPIC, users can delete Sticky Notes which are not part of a patient's designated record set because they are not for communicating information that influences a patient's care as explained by OSF Privacy Officer Elizabeth Hernandez. (Ex. 7, E. Hernandez dep. at p. 54, line 1 through p. 54, line 22; and at p. 61, line 9 through p. 62, line 6). Consistent with the OSF Privacy Officer Hernandez's testimony, EPIC trainer Ms. Bradley explained that Sticky Notes are used for matters other than a patient's record such as staffing schedules. (Ex. 6, R. Goetze Bradley dep. at p. 19, line 14 through p. 20, line 2; and at p. 60, line 13 trough p. 61, line 19). OSF's IT witness Bryan Payne additionally categorizes Sticky Notes in EPIC as a means to notify EPIC users of something nonclinical in nature. (Ex. 5, B. Payne dep. at p. 96, line 2 through p. 96, line 14). Plaintiffs lack evidence that shows Sticky Notes were used for clinical medical purposes by OSF or were deleted upon Plaintiffs suing OSF.

In the declaration of Plaintiffs' IT consultant Donald Hanson, [ECF #193-2], there is no testimony or assertion that Mr. Hanson undertook the procedure of matching OSF metadata with OSF records described by OSF IT witness Bryan Payne and that Donald Hanson failed to find what he was looking for in OSF's metadata. Mr. Payne testified at length about the processes to use when reviewing OSF audit trail reports and related medical records compiled by OSF in order to potentially see what information was modified. (Ex. 5, B. Payne at p.  Furthermore,  (Ex. 5, B. Payne dep. at p. 71 line 1 through p. 80, line 18; and at p. 85, line 20 through p. 88, line 13; and at p. 138, line 10 through p. 140, line 14). Nowhere in the declaration does Donald Hanson say

5

that he tried to use the approach testified about and outlined by OSF's witness Bryan Payne. Nor does Donald Hanson explain what search requests he plans to make to OSF personnel during two proposed days of undefined and undisclosed searches that he will direct OSF's IT personnel to perform. On a more basic level, Plaintiffs' motion does not identify a discovery request that they served on OSF, an alleged inadequate or incomplete response by OSF, along with a follow-up meet and confer inquiry by Plaintiffs made to OSF that covers items listed in the discovery motion and that OSF supposedly disregarded.

In addition, Plaintiffs did not seek an organizational witness from OSF on topics related to OSF MyChart. Mr. Payne repeatedly testified that he was not an expert on such matters and did not perform any administrative job duties in connection with OSF MyChart, a topic that was not disclosed for his deposition. (Ex. 5, B. Payne dep. at p. 128, line 14 through p. 130, line 22). Plaintiffs mischaracterize the testimony by Mr. Payne about OSF MyChart, a topic for which Mr. Payne was not identified to testify about and involving a topic outside his EPIC related areas of administration, focus, and work. In similar fashion, Plaintiffs fail to cite the testimony by Mr. Payne that one cannot see what a provider from outside of OSF could see on EPIC Care Everywhere through EPIC Care Everywhere. Mr. Payne explained that one would have to look at the other provider's EPIC system to determine what the other provider could see on EPIC Care Everywhere. (Ex. 5, B. Payne dep. at p. 36, line 1 through p. 36, line 12.). In short, OSF is not a conduit for Plaintiffs to conduct discovery of what non-party healthcare providers who have EPIC could see on EPIC Care Everywhere.

OSF's In Basket Messaging activity mostly involves automatically generated notifications issued to EPIC users, as Mr. Payne explained when referencing In Basket Messaging activity between Dr. Howse and Dr. Kang. (Ex. 5, B. Payne dep. at p. 114, line 16 through p. 115, line 12;

and at p. 117, line 14 through p. 119, line 4). As for Secure Chat, EPIC trainer Ms. Bradley informed Plaintiffs that OSF did not have instant messaging capabilities in 2017 or 2019. (Ex. 6, R. Goetze Bradley dep. at p. 20, line 3 through p. 20, line 23).

In addition, Dr. Wylie explained that different versions of his March 24, 2019 progress note were created based on direction that he received from Dr. Petrak not to include language about the hospital room with camera surveillance or the term Munchausen by Proxy that would otherwise be visible to the family. Dr. Wylie described Dr. Petrak's request as appropriate. (Ex. 8, Dr. Wylie dep. at p. 43, line 24 through p. 45, line 16). Plaintiffs lack evidence that contradicts Dr. Wylie's testimony.

Regarding note ID data needed to see who modified a version of a progress note, OSF's IT witness Bryan Payne explained that in order to obtain a note ID an EPIC user would need to create a report and write code to pull all of the note IDs out for a particular patient. (Ex. 5, B. Payne dep. at 79, line 18 through p. 80, line 18). Plaintiffs have not made a proposal of any type for the creation of such a report or identified a discovery request that they served on OSF that required OSF to write code to make such a report.

Plaintiffs also fail to identify any agreement or contract that exists between DCFS and OSF wherein OSF provides DCFS with any services much less investigative services. Furthermore, Plaintiffs have not identified any testimony by DCFS personnel that identifies an OSF employee as doing anything other than responding to legal inquiries made by DCFS. Whether a particular person associated with DCFS fails to know that the Pediatric Resource Center (PRC) is part of the University of Illinois College of Medicine Peoria does not make the PRC part of a different entity or organization such as OSF.

### III.     OSF Provided Medical Care That Involved A Complex Case

Plaintiffs have not identified any document or testimony that shows OSF, with the DCFS, investigated a report of suspected child abuse that involved the Plaintiffs. Plaintiffs have not identified an OSF employee who testified in any related Juvenile Court proceedings. Plaintiffs have not pointed to any evidence that OSF conducted an investigation of Plaintiffs together with DCFS personnel. Moreover, Plaintiffs have not cited any testimony by DCFS personnel that references an OSF medical record as being used by the DCFS for its child custody determinations involving Plaintiffs. In addition, Plaintiffs have not identified any testimony by DCFS personnel regarding how any modification of OSF medical records by OSF personnel bears any connection to what the DCFS investigated, determined, or litigated with Plaintiffs.

While Plaintiffs make a series of unfounded accusations against OSF, they overlook testimony that undermines their contentions. As one example, primary care physician Dr. Christopher Howse stated the multiple core concerns he had that bear no resemblance to what Plaintiffs try to portray about OSF and its physicians. Dr. Howse detailed his multiple concerns including medical conditions that BB had and other factors that he saw as negatively impacting the provision of medical care for BB. (Ex. 9, Vol. I, 8/16/2024, Dr. Howse at p. 97, line 5 through p. 101, line 7); (Ex. 10, Vol. II, 8/23/2024, Dr. Howse at p. 19, line 1 through p. 21, line 22). For a second example, the Court may review the testimony by Plaintiff Patricia Krueger wherein she confirms that the DCFS investigation and Juvenile Court case did not result in the denial of any medical care for her family, stated her understanding that Dr. Howse testified about multiple concerns related to BB, and expressed her appreciation for the care provided by OSF physician Dr. Keith Arnett whom she believes helped the Plaintiffs in the underlying Juvenile Court proceedings. (Ex. 11, Vol. 2, Patricia Krueger, at p. 56, line 13 through p. 56, line 20; p. 68, line

22 through p. 69, line 17; and p. 72, line 15 through p. 73, line 11). Simply put, a more complete examination of the evidence from multiple sources, including one of the Plaintiffs, highlights that lack of evidence behind Plaintiffs' multiple critiques and mischaracterizations of actions and positions taken by OSF personnel.

### IV.    The Law on ESI Discovery Motions

The governing standard for a party to identify and produce responsive ESI in discovery is not perfection. *Winfield v. City of New York,* 15-cv-05236, 2017 U.S. Dist. LEXIS 194413, *29 (S.D.N.Y. Nov. 27, 2017)(U.S. Mag. Judge Parker)("Fourth, perfection in ESI discovery is not required; rather, a producing party must take reasonable steps to identify and produce relevant documents."). Plaintiff seek to impose a standard not supported by the case law.

Federal Rule of Procedure 37(e) provides the means for claims that relevant ESI was lost that should have been preserved but was not because reasonable steps were not taken and thereby prejudiced the opposing party. *See DR Distributors v. 21 Century Smoking,* 513 F.Supp. 3d 839, 956 (N.D. Ill. 2021). Plaintiffs must satisfy five threshold requirements in order to obtain consideration that they qualify for relief under Rule 37(e). The requirements are (1) the information at issue must be ESI; (2) there must have been anticipated or actual litigation that triggered the duty to preserve ESI; (3) the relevant ESI should have been preserved at the time the litigation was anticipated or ongoing; (4) the ESI must have been lost because a party failed to take reasonable steps to preserve it; and (5) the lost ESI cannot be restored or replaced through additional discovery. *DR Distributors,* 513 F.Supp. 3d at 958. If Plaintiffs fail to satisfy any of the five requirements, then curative measures and sanctions are unavailable under Rule 37(e).

Plaintiffs fail to show that any ESI was not preserved by OSF after they filed suit in January 2022. Plaintiffs also do not identify grounds for OSF to have preserved certain alleged information

in 2019, three years before suit was filed, because OSF allegedly should have known that Plaintiffs would sue OSF three years later. This evidentiary gap alone supports denying Plaintiffs' discovery motion.

To obtain relief under either Rule 37(e)(1) or Rule 37(e)(2), Plaintiffs must then also show that they were either prejudiced by the lack of information associated with an identified source or document or demonstrate that OSF acted with bad faith intent to deprive Plaintiffs of certain documents through bad faith destruction of documents. In this case, Plaintiffs fail to substantiate either route to relief under the cited provisions of Rule 37. *Worldpay, US, Inc. v. Haydon,* No. 17-cv-4179, 2018 U.S. Dist. LEXIS 193562, **15-17 (N.D. Ill. Nov. 14, 2018)(J. Tharp, Jr.)("In all of its various motions, Worldpay has cited no case law that elaborates on what it means to destroy information with the intent to deprive another party of its use in the litigation, let alone establishes that the defendants in this case possessed the requisite intent. As a result, Worldpay has fallen short of demonstrating that the defendants destroyed the information with the intent to deprive Worldpay of its use in the litigation. Accordingly, the Court declines to order sanctions under Rule 37(e)(2).")("The problem, however, is that while Worldpay has articulated what it hopes that it might have found among the deleted information, it has provided little reason to be confident that this information actually would have been found had the domain not been shut down. It has at best an educated guess about what might have been on the domain. And, once again, throughout all of its motions, Worldpay has failed to cite any case law that elaborates on what it means to be prejudiced under the meaning of Fed. R. Civ. P. 37(e)(1) or establishes that it has been so prejudiced. In this context, the Court declines to find that Worldpay has been prejudiced.").

Plaintiffs' series of mischaracterizations of OSF fail to establish that OSF should have anticipated litigation by Plaintiffs in 2019. They also fail to show that OSF's preservation and use

1048558\323445428.v1

of EPIC was unreasonable. The combination of these two failures of proof support denying Plaintiffs' motion for discovery sanctions.

### V.     Conclusion

OSF asks the Court to deny Plaintiffs' motion for discovery sanctions in its entirety based on the multiple factual and legal deficiencies previously discussed and noted. If, however, the Court grants Plaintiffs any discovery relief, then OSF requests a conference with the Court for the purpose of having the Court define and set the scope and terms of any ESI searches to be conducted by Plaintiffs' consultant that are allowed by the Court.

WHEREFORE, Defendant OSF Healthcare System d/b/a OSF St. Francis Medical Center move the Court to deny Plaintiffs Motion for Discovery Sanctions. In the alternative, if the Court grants Plaintiffs any relief, a conference with the Court is requested so that the scope and terms of any ESI searches allowed by the Court are clarified and defined under terms set by the Court.

Dated January 6, 2025

Respectfully submitted,

/s/Ambrose V. McCall
Ambrose V. McCall (ARDC # 6196898)
HINSHAW & CULBERTSON LLP
416 Main Street, Suite 529
Peoria, IL 61602
Phone:  309-674-1025
Fax:  309-674-9328
Email:  amccall@hinshawlaw.com
Attorneys for Defendant,
OSF HEALTHCARE SYSTEM d/b/a
OSF ST. FRANCIS MEDICAL CENTER

## CERTIFICATE OF SERVICE

I hereby certify that on January 6, 2025, my office electronically filed the foregoing DEFENDANT OSF'S RESPONSE TO PLAINTIFFS' MOTION FOR DISCOVERY SANCTIONS [ECF #187] using the CM/ECF system, which will send notifications of such filing to the following:

**Counsel for Plaintiffs:**
Aaron W. Rapier
Rapier Law Firm
1770 Park Street, Suite 200
Naperville, IL  60563
arapier@rapierlawfirm.com

**Additional Counsel for Plaintiffs:**
Julie Murphy
James Ormond
Hart McLaughlin & Eldridge, LLC
1 South Dearborn, Suite 1400
Chicago, Illinois 60603
jmurphy@hmelegal.com
jormond@hmelegal.com

**Counsel for Defendant Channing Petrak:**
John P. Heil, Jr.
Ashley Broadstone
Heyl, Royster, Voelker & Allen, P.C.
300 Hamilton Blvd., P.O. Box 6199
Peoria, IL  61602
jheil@heylroyster.com
abroadstone@heylroyster.com

**Counsel for Defendants Alissa Collins, Austin Haddock, Kimberly Taylor, Kimberly Wilson, Leandra Tate, Angelique Maxell, Raelyn Galassi, Lyndsay Horcharik, Anita Parker, and *Jennifer Inness:**
Lisa A. Cook
Bernard James Slater, Jr.
Assistant Attorney's General
Office of the Illinois Attorney General
500 South Second Street
Springfield, IL  62701
Lisa.cook@ilag.gov
Bernard.Slater@ilag.gov
gls@ilag.gov

/s/Ambrose V. McCall
Ambrose V. McCall (ARDC # 6196898)
HINSHAW & CULBERTSON LLP
416 Main Street, Suite 529
Peoria, IL 61602
Phone:  309-674-1025
Fax:  309-674-9328
Email:  amccall@hinshawlaw.com

1048558\323445428.v1