# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | | |
|---|---|---|
| JACOB KRUEGER and PATRICIA KRUEGER, *individually and as the parents and next friends of AA, BB, and CC,* | ) ) ) ) ) | |
| Plaintiffs, | ) | Case No. 1:22-cv-01016 |
| v. | ) ) | |
| CHANNING PETRAK; OSF ST. FRANCIS MEDICAL CENTER; JENNIFER INNESS, *in her individual capacity*; ALISA COLLINS, *in her individual capacity*; KIMBERLY TAYLOR, *in her individual capacity*; LEANDRA TATE, *in her individual capacity*; RAELYN GALASSI, *in her individual capacity*; AUSTIN HADDOCK, *in his individual capacity*; ANITA PARKER, *in her individual capacity*; ANGELIQUE MAXWELL, *in her individual capacity*; LINDSAY HORCHARIK, *in her individual capacity*; and KIMBERLY WILSON, *in her individual capacity,* | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## <u>ORDER & OPINION</u>

This matter is before the Court on motion by Defendant Channing Petrak to dismiss Plaintiffs' Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and Local Civil Rule 7.1(B)(1) (docs. 79, 80), and on motion by Defendants Jennifer Inness, Alisa Collins, Kimberly Taylor, Leandra Tate, Raelyn Galassi, Austin Haddock, Anita Parker, Angelique Maxwell, Lindsay Horcharik, and

Kimberly Wilson ("DCFS Defendants") to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) (docs. 85, 86). Plaintiffs have responded. (Docs. 92, 93). The DCFS Defendants replied. (Docs. 104, 198). This matter is therefore ripe for review. For the following reasons, the motion filed by Dr. Petrak is granted, and the motion filed by the DCFS Defendants is granted in part and denied in part.

The Court will also hear Defendant Dr. Petrak's Motion for Partial Summary Judgment (doc. 105), Defendant OSF St. Frances Medical Center's Motion for Partial Summary Judgment (doc. 82), Plaintiffs' Motion for Leave to Amend (doc. 183), and Dr. Petrak's Motions to Compel Discovery (doc. 157) and Stay Discovery (doc. 203). These Motions are ripe for review. For the following reasons, Dr. Petrak's Motion for Partial Summary Judgment is granted, and Defendant OSF's Motion for Partial Summary Judgment is granted in part and denied in part, Plaintiffs' Motion for Leave to Amend is denied, and Dr. Petrak's Motion to Stay is moot and her Motion to Compel is granted.

BACKGROUND[1]

Plaintiffs Jacob and Patti Krueger ("the adult Plaintiffs") are the parents of minors AA, BB, and CC and filed this lawsuit pursuant to 42 U.S.C. § 1983, alleging violations of their rights under the Fourth and Fourteenth Amendments and other related claims. (Doc. 75). The violations occurred through "the illegal investigation of

---

[1] The facts are drawn from the allegations found in Plaintiffs' Amended Complaint (doc. 75) and are assumed to be true for purposes of resolving the pending motions to dismiss. *See United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018). Any disputed or material facts relevant to the motions for partial summary judgment will be discussed below.

the adult Plaintiffs, the unreasonable seizure of the minor Plaintiffs, the continued detention and withholding of the minor Plaintiffs . . . without probable cause or due process of law, and Defendants' interference with the liberty interests of the adult Plaintiffs." (Doc. 75 at 2). The Illinois Department of Child and Family Services ("DCFS") employs Defendants Jennifer Inness, Alisa Collins, Kimberly Taylor, Leandra Tate, Raelyn Galassi, Austin Haddock, Anita Parker, Angelique Maxwell, Lindsay Horcharik, and Kimberly Wilson (collectively referred to as "the DCFS Defendants"). (Doc. 75 at 6–9). Defendant Dr. Channing Petrak "served as an agent of" Defendant OSF St. Francis Medical Center ("OSF") as a child abuse pediatrician and acts as a forensic consultant to DCFS. (Doc. 75 at 5–6).

After receiving an anonymous report with concerns of medical child abuse, DCFS investigated whether the adult Plaintiffs caused BB to undergo medical procedures that placed him at risk of harm by providing an inaccurate, discrepant, or overstated medical history or symptoms. (Doc. 75 at 11–12). For the seventeen months between October 2017 and March 2019, Defendants Inness, Collins, and Petrak conducted this investigation. (Doc. 75 at 12). During this period, there were no reported or documented safety concerns that warranted the removal of AA or BB from the adult Plaintiffs' care, so AA and BB remained in their custody, and on March 7, 2019, the adult Plaintiffs were informed that the "case will finally be closed out as

unfounded." (Doc. 75 at 12–13). This was a result of Dr. Petrak's conclusion that she was unable to determine whether there was abuse or neglect. (Doc. 75 at 13–14).

Shortly after, on March 11, 2019, BB began having medical issues and was evaluated at Decatur Memorial Hospital, where he was given intravenous antibiotics and fluids and sent home. (Doc. 75 at 14). However, BB was seen by his primary care physician later that same day, who sent him back to Decatur Memorial Hospital, where he was diagnosed with perihilar pneumonia. (Doc. 75 at 14). Over the next few weeks, BB visited the emergency room and his primary care physician with respiratory illness and was hospitalized several times at OSF. (Doc. 75 at 14). Dr. Petrak was actively involved in the hospitalization that occurred on March 21, 2019, during which BB received treatment for dehydration, pneumonia, feeding intolerance, and viral illness. (Doc. 75 at 14). On March 25, 2019, BB was transferred to a hospital room at OSF, which was equipped with surveillance equipment used to monitor patients and others in the room, unbeknownst to the adult Plaintiffs. (Doc. 75 at 14).

On March 29, 2019, the adult Plaintiffs were actively planning for BB's discharge from the hospital, which included meeting with a transition specialist. (Doc. 75 at 15). On that day, Plaintiff Jacob and his mother were present at OSF. (Doc. 75 at 15). Dr. Petrak informed them that she needed to examine BB before he could be discharged. (Doc. 75 at 15). Plaintiff Jacob refused, indicating he would not allow Dr. Petrak to examine BB or participate in the meeting unless the family's attorney was present. (Doc. 75 at 15–16). Dr. Petrak asked Plaintiff Jacob if he was

4

refusing medical care for BB, to which he responded that he was not, and he wanted BB's doctors and nurses to continue caring for him. (Doc. 75 at 16). Plaintiff Jacob told Dr. Petrak that she was not BB's doctor and expressed that he did not want her involved in further plans. (Doc. 75 at 16). Dr. Petrak left the room as requested; however, Plaintiff Jacob eventually agreed to let her examine BB after speaking with hospital staff. (Doc. 75 at 16). After completing her examination of BB, Dr. Petrak said, "that is all I need," and Plaintiff Jacob asked if BB was still able to come home, to which Dr. Petrak responded that it would be "up to DCFS." (Doc. 75 at 16).

Around 10:00 p.m. on March 29, 2019, Dr. Petrak told Defendant Collins of her finding of medical child abuse. (Doc. 75 at 16). Dr. Petrak stated there was a video from OSF that showed Plaintiff Patti taking BB's diaper without letting any hospital staff check it for urine or feces; she felt this indicated Plaintiff Patti was disrupting or manipulating BB's medical care. (Doc. 75 at 16). Defendant Collins then called a DCFS investigator to report (1) Dr. Petrak made a finding of medical child abuse, and (2) Defendant Collins was authorizing DCFS to take protective custody of AA and BB. (Doc. 75 at 18). Around 11:30 p.m. on March 29, 2019, Defendant Galassi entered BB's room while multiple OSF security guards waited outside. (Doc. 75 at 17). Based on Dr. Petrak's recommendation and Defendant Collins's directive, Defendant Galassi instructed Plaintiff Jacob that he needed to sign the paperwork she brought and leave OSF immediately. (Doc. 75 at 17). When Plaintiff Jacob asked her to explain, she refused to show him the paperwork, said it did not matter, and again told him that he needed to sign it and leave OSF immediately. (Doc. 75 at 17). Plaintiff

5

Jacob continued to challenge Defendant Galassi, so she told him he could either sign the paperwork and leave on his own or refuse to sign the paperwork and be escorted out of OSF by law enforcement. (Doc. 75 at 17). Plaintiff Jacob ultimately signed the paperwork and left on his own accord; he did not discover for several months that what he had signed was a safety plan related to the removal of BB from his and his wife's custody. (Doc. 75 at 17). DCFS agents took BB into protective custody on his release from OSF on April 2, 2019, based on the recommendation of Dr. Petrak and the directive of Defendant Collins. (Doc. 75 at 20). AA was taken from the adult Plaintiffs' home by DCFS and placed into foster care on March 31, 2019. (Doc. 75 at 18, 20).

On April 1, 2019, Dr. Petrak prepared a report for Defendants Inness and Collins in which she concluded the adult Plaintiffs had caused BB to undergo procedures and medical therapies that placed him at serious risk of harm because they (1) provided either an inaccurate or overstated medical history and (2) kept information from medical staff. (Doc. 75 at 18). The report purportedly contradicted documentation from other sources familiar with BB's medical history and treatment. (Doc. 75 at 19). Defendant Inness completed her safety assessment regarding Plaintiffs, in which she concluded "[AA and BB] are currently safe" and "[t]he family is doing well overall and no safety concerns [are] noted." (Doc. 75 at 20–21) (internal quotations and emphasis omitted). Despite this assessment, a petition alleging the adult Plaintiffs had abused and neglected AA and BB was filed in the Macon County Juvenile Court on April 2, 2019. (Doc. 75 at 20).

6

On June 19, 2019, a shelter care hearing for AA and BB was held, and the juvenile court found there was "probable cause to believe" AA and BB were "neglected, abused or dependent and that it [was] a matter of immediate and urgent necessity that the minor[s] be placed in shelter care." (Doc. 86-12 at 17). Defendant Inness testified that there were concerns of abuse or neglect. (Doc. 75 at 21). Plaintiffs allege now that exculpatory evidence related to BB's medical history, mold in their home, and Plaintiff Patti's psychological assessments were ignored or withheld at the hearing. (Doc. 75 at 21–22).

During these events, Plaintiff Patti gave birth to her third child, CC, who was removed from the adult Plaintiffs' care on August 13, 2019. (Doc. 75 at 23). On March 9, 2020, the adult Plaintiffs stipulated to allegations of neglect set forth in the first supplemental petition, and the original petitions were dismissed and stricken. (Doc. 86-4 at 5). Based on the stipulation, the court concluded AA, BB, and CC were neglected. (Doc. 86-4 at 5). However, this finding of neglect was later vacated on July 8, 2020. (Doc. 86-4 at 7). That same day, the court concluded it was safe and in the best interest of AA, BB, and CC to be returned to the care of the adult Plaintiffs. (Doc. 86-4 at 7). On October 7, 2020, supervision was terminated, and the case was closed. (Doc. 86-4 at 8).

Plaintiffs initiated this lawsuit on January 10, 2022. (Doc. 1). The DCFS Defendants filed a motion to dismiss, which was granted in part on October 14, 2022. (Doc. 22). On that same day, the Court instructed Dr. Petrak and Plaintiffs to confer on whether the Section 1983 claims were properly pleaded. (*See* Text Order dated

October 14, 2022). Dr. Petrak responded with a motion to dismiss (doc. 23); upon referral, Magistrate Judge Hawley recommended denial of that motion after hearing argument on February 16, 2023, and March 20, 2023, and this Court adopted that recommendation (doc. 36). In doing so, the Court emphasized that the allegations were "barely sufficient to survive dismissal." (Doc. 36).[2] The parties proceeded to discovery, and Plaintiffs filed the operative Amended Complaint on February 7, 2024, pursuant to the discovery plan agreed to by all parties. (Doc. 75). The operative pleading now contains twenty-eight counts directed at the various defendants. Defendant Dr. Petrak moves to dismiss Counts XII, XIII, and XXVII against her. (Docs. 79, 80). The DCFS Defendants move to dismiss Counts I–VI, XIV–XXIII, and XXVIII against them. (Docs. 85, 86).

Both Dr. Petrak and OSF move for partial summary judgment. (Docs. 84, 105). Dr. Petrak seeks summary judgment on Counts XI, XII, XIII, and XXIV; OSF seeks summary judgment on Counts VII, VIII, X, XI, XII, XIII, XXIV, XXV, XXVI, and XXVII. In response to part of those Motions, Plaintiffs request leave to amend and supplement their pleading. (Doc. 183). While these Motions have been pending, Dr. Petrak has moved to compel and stay discovery. (Docs. 157, 203).

## LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the complaint must contain "a short and plain statement"

---

[2] The Court acknowledges that Plaintiffs have not amended those "barely sufficient" allegations in the Section 1983 claims and predicts that Dr. Petrak will file another motion for partial summary judgment as the dispositive deadline approaches.

of the plaintiff's claim sufficient to plausibly demonstrate entitlement to relief. Fed. R. Civ. P. 8(a); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). When considering a motion to dismiss, the Court construes a complaint in the light most favorable to the plaintiff, accepting all well-pleaded factual allegations as true "and 'draw[ing] all reasonable inferences from those facts in favor of the plaintiff.' " *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018) (quoting *Kubiak v. City of Chi.*, 810 F.3d 476, 480–81 (7th Cir. 2016)). Those statements which are legal conclusions rather than factual allegations are not taken as true but are disregarded at this stage. *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012).

A party may seek partial summary judgment as to a claim or defense. *See Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 606 (7th Cir. 2015). Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id*. After a "properly supported motion for summary judgment is made,

the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 250 (internal quotations omitted).

The Court must construe the record in the light most favorable to the nonmovant, *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003), "resolving all factual disputes and drawing all reasonable inferences in favor of [the nonmovant]," *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017). It "must refrain from making credibility determinations or weighing evidence." *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 467 (7th Cir. 2020) (citing *Anderson*, 477 U.S. at 255). In ruling on a motion for summary judgment, the Court does not give the non-moving party "speculative inferences in [its] favor." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id.* Not all factual disputes will preclude the entry of summary judgment, only those that "could affect the outcome of the suit under governing law." *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001) (citation omitted).

## DISCUSSION

As stated, the following Motions will be addressed: Dr. Petrak's Motion to Dismiss (doc. 79); the DCFS Defendant's Motion to Dismiss (doc. 85); OSF's Motion for Partial Summary Judgment (doc. 82); Dr. Petrak's Motion for Partial Summary Judgment (doc. 105); Plaintiffs' Motion for Leave to Amend (doc. 183); Dr. Petrak's Motion to Compel (doc. 157); and Dr. Petrak's Motion to Stay Discovery (doc. 203).

## I.    Dr. Petrak's Motion to Dismiss

In the Amended Complaint, Plaintiffs allege six additional state-law claims against Dr. Petrak: negligence (Count XI), informed consent (Count XII), battery (Count XIII), false imprisonment (Count XXIV), malicious prosecution (Count XXV), and fraudulent concealment or misrepresentation (Count XXVII). (Doc. 75). Dr. Petrak moves to dismiss Counts XII, XIII, and XXVII for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). She asks this Court to dismiss these claims as Plaintiffs have only pleaded conclusory allegations without sufficient factual support to establish the material elements of each cause of action. The Court will discuss each count in turn.

### A.    *Informed Consent* (*Count XII*)

To adequately allege an informed-consent claim, Plaintiffs must establish "(1) the physician had a duty to disclose material risks; (2) [she] failed to disclose or inadequately disclosed those risks; (3) as a direct and proximate result of the failure to disclose, the patient consented to treatment [they] otherwise would not have consented to; and (4) plaintiff was injured by the proposed treatment." *Lash v. Sparta Cmty. Hosp. Dist.*, 38 F.4th 540, 544 (7th Cir. 2022) (internal quotation marks omitted). In moving for dismissal, Dr. Petrak contends that Plaintiffs' Amended Complaint is silent as to her duty to disclose material risks, and that

> [t]here are zero allegations regarding the substance of treatment provided to BB and/or whether BB, or his parents, needed certain information from Dr. Petrak in order to be able to make an informed decision on whether to undergo that treatment, or an alternative. There are similarly no allegations that BB, or his parents, consented to treatment that they otherwise would not have consented to, had they been better informed by Dr. Petrak. Plaintiffs have not only failed to

11

allege defective consent, but they have also failed to proffer any allegations to support proximate cause.

(Doc. 80 at 6). Plaintiffs respond, arguing that the "treatment" alleged was the examination, and that Dr. Petrak "failed to obtain informed consent to perform [the examination of BB] because she did not disclose her true role and purpose in requesting consent to perform this treatment." (Doc. 92 at 4). Because Dr. Petrak failed to disclose the "nature of her role," "implied she was there to provide care, and that refusing to allow her to examine BB would amount to 'refusing medical treatment,'" and falsely reported that BB had to be examined before discharge from OSF, the consent provided by Plaintiffs was not informed. (Doc. 92 at 5).

An informed-consent claim is a form of medical negligence, not an intentional tort. *See Roberts v. Patel*, 620 F.Supp. 323, 325 (N.D. Ill. 1985) ("The elements of the informed consent action parallel those of an ordinary malpractice claim."). To survive dismissal, Plaintiffs must "point to significant undisclosed information relating to the treatment which would have altered [their] decision to undergo it." *Coryell v. Smith*, 274 Ill. App. 3d 543, 546 (1st Dist. 1995). Plaintiffs include the following allegations related to Dr. Petrak's actions in Count XII:

a. Failed to obtain consent for the touching, examination, surveillance, and/or investigation concerning the minor BB;

b. Continued with touching, examination, surveillance, and/or investigation of the minor BB without consent;

c. Failed to disclose her touching, examination, surveillance, and/or investigation of the minor BB to Adult Plaintiffs;

d. Failed to disclose the true purpose of her touching, examination, surveillance, and/or investigation of the minor BB to Adult Plaintiffs;

e. Purposefully concealed her touching, examination, surveillance, and/or investigation of the minor BB from his parent;

f. Misstated facts regarding her touching, examination, surveillance, and/or investigation of the minor BB;

g. Otherwise caused and/or contributed to cause the violations alleged herein.

(Doc. 75 at 38–39). They also allege that these actions caused Plaintiffs to suffer injuries. (Doc. 75 at 39). Upon review, Plaintiffs have failed to state an informed consent claim because they did not allege that these actions by Dr. Petrak caused them to consent to medical treatment[3] that they otherwise would not have. This is a necessary element to this type of claim; without it, the Court cannot say that Plaintiffs have plausibly shown a right to relief. Additionally, the Court is skeptical that this type of "harm" can be captured in a negligence claim. "It is well established that a claim that a health professional acted without the informed consent of the patient is a type of medical malpractice claim." *McDonald v. Lipov*, 2014 IL App (2d) 130401, ¶ 18. What Plaintiffs allege here is not typical negligence, but that Dr. Petrak intentionally acted to harm the Plaintiffs by withholding information and misstating her motive to examine BB. (Doc. 75 at 38–39). While they may attempt to recite the

---

[3] It is worthwhile to mention that the Court is not convinced that Dr. Petrak's examination of BB can be properly categorized as medical treatment. As alleged, Dr. Petrak informed Plaintiff Jacob that the examination was for discharge. Despite Plaintiffs' attempt to turn this examination into something more sinister, there is nothing in the Amended Complaint to suggest that Dr. Petrak had any motive beyond ensuring that BB was prepared for discharge. It would not be a reasonable inference that Dr. Petrak had "ulterior motives" from the actions she took; if anything, "treatment" is a misnomer for the discharge-related evaluation of BB.

elements of an informed consent claim in their pleading, the true nature of the alleged actions is not negligence.

Therefore, Dr. Petrak's Motion is granted as to Count XII. Plaintiffs' informed consent claim is dismissed for failure to state a claim.

### B.    *Medical Battery (Count XIII)*

A medical battery claim requires that a defendant "committed an intentional, unconsented-to act resulting in offensive contact with the plaintiff's body." *Johnson v. Tinwalla*, 855 F.3d 747, 750–51 (7th Cir. 2017). Dr. Petrak argues for dismissal of this claim because Plaintiffs fail to include sufficient facts to place her on notice of when the battery occurred, and because Plaintiffs gave consent for the examination of BB. (Doc. 80 at 6–9). In response, Plaintiffs state that the consent given "equates to no consent at all" because Dr. Petrak did not disclose her motives. (Doc. 92 at 6).

"A plaintiff claiming medical battery in Illinois may recover if he shows 'a total lack of consent to the procedure performed, that the treatment was contrary to the patient's will, or that the treatment was at substantial variance with the consent granted.' " *Parker v. United States*, 721 F. App'x 531, 532–33 (7th Cir. 2018) (quoting *Fiala v. Bickford Senior Living Group, LLC*, 2015 IL App (2d) 150067, ¶ 20). Within Count XIII, Plaintiffs pleaded that Dr. Petrak lacked informed consent, and that any consent was obtained under false pretenses. (Doc. 75 at 39–40). This is not enough to meet the elements required to state this type of claim. *See also Fiala*, 2015 IL App (2d) 150067, ¶ 36 ("As we have discussed, plaintiff did not plead a lack of informed consent, but pleaded instead a complete lack of consent. This is key, because the cases

14

distinguish between a lack of consent for the contested act (generally battery) and a lack of informed consent for the contested act (negligence).").

To plead this type of claim, Plaintiffs must allege facts that demonstrate either a total lack of consent, that the treatment of BB was contrary to their will, or that the examination was substantially varied from what Plaintiffs consented to. *Parker*, 721 F. App'x at 532–33. As is, Plaintiffs' claim does not establish that Dr. Petrak treated BB without consent, or deviated in any way from the examination she told Plaintiffs she was going to physically perform. Plaintiffs' Response does nothing to convince this Court otherwise—it details that Plaintiff Jacob "provided consent for Petrak to examine BB" but that because Dr. Petrak misstated her intentions, it should not count. (Doc. 92 at 6). There is no "mental" element to alleging a medical battery claim that captures the "ulterior motives" Plaintiffs point to. Simply put, Dr. Petrak had Plaintiff Jacob's consent to perform the examination and did not physically perform any treatment that she was not granted consent to do. Therefore, Count XIII is dismissed.

C.    *Fraudulent Concealment or Misrepresentation (Count XXVII)*

Under Illinois law, "fraud claims require a five-part showing: (1) a false statement or omission of a material fact; (2) the defendant's knowledge or belief that the statement was false; (3) the defendant's intent to induce the plaintiff to act; (4) the plaintiff's reliance upon the truth of the statement; and (5) damages to the plaintiff resulting from his reliance on the statement." *McMahan v. Deutsche Bank AG*, 938 F. Supp. 2d 795, 804 (N.D. Ill. 2013). Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud," or, in other words,

the "who, what, when, where, and how." Fed. R. Civ. P. 9(b); *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011) (citation omitted). Rule 9(b) does not govern only claims of fraud; it applies to claims that are "premised upon a course of fraudulent conduct," as well. *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007).

Dr. Petrak contends Plaintiffs have completely failed to allege the elements required to state a cause of action for fraudulent concealment or misrepresentation, and that this count only includes few allegations—that Dr. Petrak covertly conducted video surveillance of them on March 25, 2019, made an investigative finding based on this video, and misstated and misrepresented facts that she knew would be report to juvenile court. (Doc. 80 at 10). Although Plaintiffs incorporate the almost 300 preceding allegations by reference, Dr. Petrak argues she should not have to scrutinize the pleading for factual allegations that could aid in stating this type of claim against her, especially in light of Rule 9(b)'s heightened standard. (Doc. 80 at 10–11).

The Court agrees with Dr. Petrak, and Plaintiffs' responsive arguments do not persuade otherwise. While it is true that "individual allegations cannot be read in a vacuum, and instead, must be read in the context of the entire complaint," *Bancorpsouth, Inc., v. Fed. Ins. Co.*, 873 F.3d 582, 586–87 (7th Cir. 2017), a defendant is entitled to notice of the claims against it, *Schmees v. HC1.COM, Inc.*, 77 F.4th 483, 488 (7th Cir. 2023) ("[D]efendants are entitled to fair notice of each claim against them, as required by the Federal Rules of Civil Procedure."). The preceding

allegations do not only relate to Dr. Petrak but also chronicle the actions of numerous other parties. It is not the burden of the defendant to parse through and hunt for allegations that could state this particular cause of action. As Count XXVII reads now, it describes how Dr. Petrak recorded the family, and then made a finding based on this recording. (Doc. 75 at 55–56). There are no allegations that establish a basis for the five elements necessary to bring a claim of fraud; namely, there are no allegations related to Dr. Petrak's knowledge of the falsity of her statements, her intent to induce action, or Plaintiffs' reliance on such statements. Plaintiffs must include specific factual allegations as to the "who, what, where, and when" of this fraud claim for it to survive pursuant to Rule 9(b). Therefore, Count XXVII is dismissed.

## II.    DCFS Defendants' Motion to Dismiss

Seventeen of the twenty-eight claims brought by Plaintiffs are alleged against the DCFS Defendants. Counts I–III allege unlawful seizures of AA, BB, and CC in violation of the Fourth Amendment. (Doc. 75 at 30–32). Counts IV and VI are claims detailing Defendants' interference with familial relationship in violation of the Substantive Due Process Clause of the Fourteenth Amendment. (Doc. 75 at 32–33, 33–34). Count V is a procedural due process claim under the Fourteenth Amendment. (Doc. 75 at 33). The state-law claims, Counts XIV–XXIII, allege negligence against each of the DCFS Defendants, and Count XXVIII is a claim of fraudulent concealment or misrepresentation against only Defendant Galassi. (Doc. 75 at 41–52, 56). The DCFS Defendants move to dismiss all the claims against them for various reasons.

17

The motion is similar, and in many parts identical, to the previous dismissal motion decided on October 14, 2022. (*See* doc. 22).

A related and preliminary argument raised by Plaintiffs in opposition to dismissal is that the DCFS Defendants previously raised these arguments, which were mostly denied, and then answered the original complaint; thus, they are now barred from filing this motion to dismiss. (Doc. 93 at 3). Ordinarily, "[t]he filing of an amended complaint will not revive the right to present by motion defenses that were available but were not asserted in timely fashion prior to the amendment of the pleading," but "a . . . defense that becomes available because of new matter in the amended complaint may be asserted by motion." 5C Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc. Civ.* § 1388 (3d ed. 2020); *see also Keefe v. Derounian*, 6 F.R.D. 11, 13 (N.D. Ill. 1946) (denying motion to dismiss amended complaint, which contained no new factual allegations or legal argument but which merely corrected jurisdictional information, because the court had already denied defendant's motion to dismiss original complaint on the same grounds). Here, the DCFS Defendants may move to dismiss any new legal theory within the Amended Complaint, however, they may not move to dismiss the same content merely because Plaintiffs have repackaged it in a new pleading. *See Fed. Agric. Mortg. Corp. v. It's A Jungle Out There, Inc.*, No. C 03-3721, 2005 WL 3325051, at *5 (N.D. Cal. Dec. 7, 2005) (collecting cases). They similarly cannot "advance arguments that [they] could have made in the motion to dismiss the [first] complaint but neglected to raise." *Redwood v. Piland*, No. 00-2305, 2005 WL 8164631, at *2 (C.D. Ill. Jan. 24, 2005).

18

Regardless of this precedent, the DCFS Defendants contend that reassertion of their previous arguments is proper because Plaintiffs were purposefully evading dismissal by failing to attach the transcript of the shelter care hearing to their pleading, and because Defendants did not have access to the transcript until after the Court ruled on the previous motion. (Doc. 198 at 4–5). The purpose of Rule 12(b)(6) is to prevent litigants from asserting defenses in a piecemeal fashion; although, courts have allowed successive Rule 12 motions where they are "not interposed for delay," have "addressed each of the causes of action," and "if the supporting grounds for such motion were valid, adjudication of the motion would 'clearly expedite the disposition of the case on the merits.'" *Donnelli v. Peters Sec. Co.*, No. 02 C 0691, 2002 WL 2003217, at *4 (N.D. Ill. Aug. 29, 2002) (citing *Kincaid v. City of Anchorage*, 100 F.Supp. 325, 327 (D. Alaska 1951)). In light of these factors, and because the shelter care hearing transcript is now attached to the briefing, the Court will reconsider whether issue preclusion applies. It will then analyze the DCFS Defendants' remaining arguments related to the newly added state-law claims.[4]

A.    *Issue Preclusion*

The DCFS Defendants argue that Counts I–VI are barred by issue preclusion, as the state proceedings previously determined that there was probable cause to

---

[4] Plaintiffs additionally argued that the DCFS Defendants' memorandum of law in support of their Motion (doc. 86) violated Local Rule 7.1(B) in that it exceeded fifteen pages in length (doc. 93 at 2–3). In consideration of their oversight, the DCFS Defendants filed a Motion for leave to file excess pages. (Doc. 100). The Court granted the Motion (doc. 100) and admonished the DCFS Defendants for their failure to comply with the Local Rules; however, this oversight does not warrant dismissal. (Text Order dated May 15, 2024).

remove the children from their care; thus, Plaintiffs cannot claim otherwise in this lawsuit. (Doc. 86 at 10–19). As discussed, the shelter care hearing transcript is now attached. (*See* docs. 86-7, 86-8, 86-9, 86-10, 86-11, 86-12).[5] The foundation of the Court's analysis remains the same.

"Issue preclusion prevents a party from relitigating an issue that it has previously litigated and lost," even when part of a new claim. *Jensen v. Foley*, 295 F.3d 745, 748 (7th Cir. 2002) (citing *Donald v. Polk County*, 836 F.2d 376, 381 (7th Cir. 1988)). As federal courts must give state court judgments the same preclusive effect as a court in the rendering state would, the preclusion laws of Illinois control here. *Jensen*, 295 F.3d at 748. In Illinois, the application of collateral estoppel requires: "(1) the issue decided in the prior proceeding must be identical to the one in the current suit; (2) the prior adjudication must have been a final judgment on the merits; and (3) the party against whom the estoppel is asserted must have been a party to, or must be in privity with a party to, the prior adjudication." *Hope Clinic for Women, Ltd. v. Flores*, 2013 IL 112673, ¶ 77. However, if the issues decided in the prior adjudication are not identical, then, under Illinois law, collateral estoppel does not apply. *Brokaw v. Weaver*, 305 F.3d 660, 669 (7th Cir. 2002) (citing *Kalush v. Deluxe Corp.*, 171 F.3d 489, 493 (7th Cir.1999)).

---

[5] Judicial notice may be taken of the records and hearing transcripts attached to the DCFS Defendant's Motion. *See J.B. v. Woodard*, 997 F.3d 714, 717 (7th Cir. 2021) ("We can also take judicial notice of matters of public record, including court filings and documents from the ongoing state court proceedings incorporated into the federal complaint."); *4901 Corp. v. Town of Cicero*, 220 F.3d 522, 527 n.4 (7th Cir. 2000) (district court may take judicial notice of state court order).

The DCFS Defendants argue that issue preclusion bars these claims because Plaintiffs had a full and fair opportunity to litigate and challenge the integrity of the evidence against them in state court, any claim that exculpatory evidence was ignored at the state court is either moot or blatantly false, and Plaintiffs failed to appeal the state court decision. (Doc. 86). However, none of these arguments address the heart of Plaintiffs' Amended Complaint, which is that DCFS agents and Dr. Petrak maliciously and intentionally put forth false and misleading information that caused Plaintiffs' children to be removed from their custody. (*See* doc. 75 at 3) ("[R]emoval of the minor Plaintiffs and the continued withholding of the children from their parents was the product of an arbitrary and constitutionally deficient child welfare investigation."). They allege misconduct outside of what was considered by the state court; thus, these claims cannot be barred at this stage by issue preclusion even when reviewing the transcript.

As this Court explained, the Seventh Circuit has drawn a distinction in similar cases between " 'the sufficiency of the evidence to establish probable cause' and 'the integrity of the evidence' used to establish probable cause" to remove children. *Brokaw*, 305 F.3d at 670. Therefore, where a plaintiff's claims rested in part on "the defendant's intentional misrepresentation or concealment of material facts," the court held that the state court's finding of probable cause for removal did not preclude the plaintiff's claims in federal court. *Id*.

Here, Plaintiffs assert in part that the DCFS Defendants, along with Dr. Petrak, misrepresented information, coerced the parents, and concealed information

at the hearing, including exculpatory evidence related to environmental concerns like mold. (Doc. 75 at 3–5, 22–23). The law is clear: if the finding of probable cause was based on the misrepresentation or concealment of material facts, "the plaintiff may be able to proceed on a Fourth Amendment claim challenging the reasonableness" of such finding. *Brokaw*, 305 F.3d at 670. *See also Ibitayo v. McDonald*, No. 03 C 3362, 2003 WL 22765046, at *4 (N.D. Ill. Nov. 20, 2003) (declining to apply issue preclusion and writing "the state court's proceeding addressed only the 'sufficiency' of [the] report to support the probable cause finding necessary to continue the barring order and monitoring. The court did not address whether the report contained intentional misrepresentations"). On a motion to dismiss, the Court must accept the allegations as true, and make any plausible inference in Plaintiffs' favor. Thus, while issue preclusion may bear further exploration as the case proceeds, the Court cannot conclude on the basis of the pleadings that this affirmative defense warrants dismissal of the claims.[6]

 The DCFS Defendants also argue that Plaintiffs had a full and fair opportunity to be heard at the probable cause hearing, as they were present and represented by

---

[6] The DCFS Defendants again rely on a Northern District of Illinois case, *Tehan v. Smith*, 20-cv-50515, Doc. 43 (N.D. Ill. March 14, 2022), in which the court applied issue preclusion to similar claims and dismissed the complaint. The differences between the instant matter and *Tehan* were addressed in the previous order. (Doc. 22). Despite now being able to review the transcript of the shelter care hearing, the Court still finds *Tehan* distinguishable, as it is not clear from the transcript that the alleged concealments, misrepresentations, and exculpatory evidence was discussed at the state court. The *Tehan* court was able to expressly state that each issue raised by the plaintiff in the federal litigation was heard at the previous state court hearing. That is not true here. This argument is therefore not persuasive on a motion to dismiss.

counsel. (Doc. 86 at 18–19). As Plaintiffs failed to exercise their right to appeal the decision, Defendants argue that they cannot now seek to relitigate the issue of probable cause after the state court has conclusively ruled against them. As the parties proceed through discovery, it may become apparent that Plaintiffs have already received a full and fair opportunity to raise any argument about probable cause to the state court. *See Chen v. Lovins*, No. 21CV01925, 2023 WL 8648342, at *5 (S.D. Ind. Dec. 14, 2023) (granting summary judgment and applying issue preclusion to Fourth Amendment claims after the plaintiff failed to "designate[] evidence that she was prevented from arguing that probable cause did not support any of the [agency's] actions"). At this stage, however, this argument is rejected.

B.    *Previously Heard Arguments*

The DCFS Defendants renew their arguments for dismissal of Plaintiffs' Fourth Amendment and Fourteenth Amendment claims, as well as their assertion that qualified immunity applies. (Doc. 83 at 19–21, 28–31). In doing so, Defendants ask this Court to reconsider these arguments now that the shelter care hearing transcript is available. (*See* doc. 198) (replying "issue preclusion as to a finding of probable cause speaks directly to the basis of their Fourth and Fourteenth Amendment claims under FRCP 12(b)(6) in that they fail to state a claim for which relief can be granted" and "Defendants previous assertion of qualified immunity was denied on the grounds that are no longer at issue given the addition of the juvenile court transcripts to the record"). Because the Court has come to the same conclusion that issue preclusion does not bar this action at this stage of the proceedings, these

23

arguments are rejected for the same reasons as stated in the previous Order and need not be analyzed. (*See* doc. 22).

Along the same lines, the DCFS Defendants updated their argument for dismissal under the Eleventh Amendment in response to the analysis provided in the previous Order. (*See* doc. 83 at 31–32). This renewed argument cannot be properly heard on a successive motion to dismiss. *See Redwood*, 2005 WL 8164631 at \*2 ("Defendant may not challenge the sufficiency of the third amended complaint with arguments that the Court previously considered in response to the motion to dismiss the second amended complaint."). This part of the DCFS Defendants' Motion is denied.

The only claim that warrants discussion is Plaintiffs' Count VI. Previously, the Court dismissed this claim without prejudice, as the substantive-due-process allegations failed to state a claim upon which relief may be granted. (*See* doc. 22 at 14–15). Deploying the standards relevant to this type of claim, the Court wrote "a balance must be reached between the fundamental right to the family unit and the state's interest in protecting children from abuse . . . ." (Doc. 22 at 13) (citing *Brokaw*, 235 F.3d at 1019). It analyzed the claims under the same reasonableness test used to evaluate Fourth Amendment claims, as required. (Doc. 22 at 13–15). The analysis was as follows:

> In support of this claim, Plaintiffs' Complaint states Defendants Taylor and Horcharik told Plaintiffs Jacob and Patti their children would be returned home if they admitted to the alleged abuse and neglect. (Doc. 1 at ¶ 158). The Complaint also states, "Horcharik told Jacob if he divorced Patti, then his children would be returned to him." (Doc. 1 at ¶ 159). Even read in a light most favorable to Plaintiffs, it is unclear how

these facts support the allegation the State shifted the burden of proof to the adult Plaintiffs. To the contrary, these statements show Defendants prompted the adult Plaintiffs to admit guilt, not prove innocence. As these are the only facts offered in support of Plaintiffs' allegation the State "impermissibly . . . shifted to Jacob and Patti the burden of proving to DCFS that they were not guilty of abuse of neglect," (doc. 1 at ¶ 157), this claim is no more than a conclusory statement unsupported by fact. It must therefore be dismissed.

(Doc. 22 at 15). Plaintiffs were granted fourteen days to amend this claim; however, no amendment was filed until February 7, 2024. (*See* Text Order dated February 15, 2024). A review of the amended pleading reveals that no other supporting allegations were added to Count VI; therefore, it is dismissed with prejudice.

### C.  *Negligence Claims*

The DCFS Defendants argue for the dismissal of the negligence claims leveled at Inness (Count XIV), Collins (Count XV), Taylor (Count XVI), Tate (Count XVII), Galassi (Count XVIII), Haddock (Count XIX), Parker (XX), Maxwell (Count XXI), Horcharik (Count XXII), and Wilson (Count XXIII). (Doc. 86 at 21–24). The arguments are related to the Illinois Tort Immunity Act, 745 ILCS 10/1-101, *et seq.*, which the DCFS Defendants later concede does not actually apply to the matter at hand. (*See* doc. 198 at 6) (replying that "[w]hile Defendants argued in their motion and supporting memorandum that the Illinois Tort Immunity Act applied to [Plaintiffs'] claims, that argument was mistaken"). The Court appreciates Defendants' willingness to concede mistaken arguments; however, Defendants then ask for the doctrine of Public Official Immunity to be applied to the claims against them because it "fundamentally mirrors the protections of the Illinois Tort Immunity

25

Act in that it does not provide immunity for willful or wanton conduct and applies only to discretionary acts of public officials." (Doc. 198 at 6).

The general rule is that arguments raised for the first time in reply briefs are ordinarily waived, and rightly so given the lack of opportunity for the other party to respond to them. *See, e.g., Carroll v. Lynch*, 698 F.3d 561, 564 n.2 (7th Cir. 2012). The Court sees no reason to deviate from this precedent and declines to consider an argument first raised in a reply.

### D.    Fraudulent Concealment Claim (Count XXVIII)

Defendant Galassi moves to dismiss Count XXVIII, a fraudulent concealment or misrepresentation claim, because Plaintiffs have failed to state claim upon which relief may be granted. As discussed with respect to the fraudulent concealment claim brought against Dr. Petrak, the "fraud claims require a five-part showing: (1) a false statement or omission of a material fact; (2) the defendant's knowledge or belief that the statement was false; (3) the defendant's intent to induce the plaintiff to act; (4) the plaintiff's reliance upon the truth of the statement; and (5) damages to the plaintiff resulting from his reliance on the statement." *McMahan*, 938 F. Supp. at 804. This claim is subject to the heightened pleading standard under Rule 9(b).

While Plaintiffs incorporate all preceding allegations by reference into this count, the only allegations within Count XXVIII include:

> 306. On March 29, 2019, Defendant Galassi concealed the purpose of the paperwork upon which Plaintiff Jacob was required to sign with the intent to deceive or defraud Jacob into signing a safety plan related to the removal of BB from Jacob and Patti.

> 307. While under duress, Jacob signed the paperwork, which ultimately led to the removal of BB.

(Doc. 75 at 56). Like the analysis of the claim against Dr. Petrak, these two statements are not enough to place Galassi on notice of the claims against her. Plaintiffs must allege more, "the who, what, when, where, and how" of the fraud committed. *AnchorBank,* 649 F.3d at 615. Once again, the burden to hunt down supporting allegations within a fifty-eight-page pleading is not on the defendant. Therefore, Count XXVIII is dismissed without prejudice.

In sum, Counts XII, XIII, XXVII, and XXVIII are dismissed without prejudice. The Court will discuss Plaintiffs' leave to amend certain claims within the conclusion of this Order. To the extent Plaintiffs intended to allege Count VI again, it is dismissed with prejudice.

## III. Application of the Illinois Healing Art Malpractice Statute on Summary Judgment

Both pending Motions for Partial Summary Judgment are ripe for this Court's review, as well as Plaintiffs' related request to supplement their Amended Complaint. (Docs. 84, 105, 183). The basis of Dr. Petrak's request for summary judgment on Counts XI, XII, XIII, and XXIV is that these claims fail to comply with the Illinois Healing Art Malpractice statute, 735 ILCS 5/2-622. (Doc. 105). Additionally, OSF requests summary judgment on Counts XI, XII, XIII, XXIV, and XXVI for this alleged failure. (Doc. 82). Each claim is directed at both Dr. Petrak and OSF except Count XXVI, which is only directed at OSF. (Doc. 75). Section 2-622 requires a plaintiff to file with the complaint an affidavit of merit and report of a reviewing health professional opining that there is meritorious basis for bringing the action in medical malpractice suits. Further, the statute provides that failure to file an affidavit is

27

"grounds for dismissal." 5/2-622(g). Plaintiffs respond that these specific claims are not subject to the nuanced requirements of the Illinois statute, and ask this Court to deny summary judgment, or, in the alternative, to grant leave to amend. (Docs. 94, 107). There are no disputed, material facts related to whether the claims are subject to this requirement. (*See* docs. 82, 94, 98, 105, 107, 120).

An initial argument raised by Plaintiffs is that the motions are premature. (Docs. 94 at 3, 104 at 3–4). In *Young v. United States*, the Seventh Circuit clarified that when a plaintiff failed to provide the required affidavit and report, the case was subject to summary judgment, rather than dismissal pursuant to Rule 12 of the Federal Rules of Civil Procedure. 942 F.3d 349 (7th Cir. 2019). Specifically, the Seventh Circuit reasoned that "Section 5/2-622 applies in federal court to the extent that it is a rule of substance; but to the extent that it is a rule of procedure it gives way to Rule 8 and other doctrines that determine how litigation proceeds in a federal tribunal." *Id*. at 351. Rule 8 of the Federal Rules of Civil Procedure "does not require attachments [to the complaint] . . . supporting documents come later." *Id*. Therefore, because a "motion to dismiss asserts that the complaint is defective," a "complaint in federal court cannot properly be dismissed because it lacks an affidavit and report under § 5/2-622." *Id*. Rather, dismissal for failure to provide the affidavit and report should occur on summary judgment, a motion which can be filed "at any time." *Id*. (citing Fed. R. Civ. P. 56(b)). Neither Dr. Petrak's nor OSF's motion is premature or otherwise untimely—both follow the procedures outlined by the Seventh Circuit in *Young* and were brought well before thirty days after the close of discovery. *See* Fed.

28

R. Civ. P. 59(b). Plaintiffs' arguments related to Dr. Petrak's "serval motion practice" or general untimeliness are not convincing and are therefore rejected.

The remaining arguments are with respect to Dr. Petrak's Motion—Plaintiffs state it is procedurally defective in that she attaches exhibits which are not admissible. (Doc. 107 at 3). They cite to *Friedel v. City of Madison*, 832 F.2d 965, 970 (7th Cir. 1987), which outlines how material support a motion for summary judgment must "must be established through one of the vehicles designed to ensure reliability and veracity – depositions, answers to interrogatories, admissions and affidavits. When a party seeks to offer evidence through other exhibits, they must be identified by affidavit or otherwise made admissible in evidence." (Doc. 107 at 3). Because Dr. Petrak attached "a handful of pages from OSF's medical records," the Court should strike her exhibits. (Doc. 107 at 3). In her Reply, Dr. Petrak reminds the Court that the Federal Rules "allow a party to support the assertion that a fact is not genuinely disputed by 'citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials.' " (Doc. 120 at 2) (citing Fed. R. Civ. P. 56(c)(1)(A)). Dr. Petrak then explained how regardless of whether Plaintiffs are making a foundation or hearsay objection (they do not specify), they fail to question the accuracy or reliability of the records, and the records were not offered for the truth of the matter asserted. (Doc. 120 at 3).

This dispute does not need to be resolved at this time. Dr. Petrak offered the records to "illustrate the scope of [her] inquiry leading to her conclusion that the child identified in the caption of this case as 'BB' was subjected to medical child abuse." (Doc. 120 at 3). The Court does not need to analyze the medical record pages to determine whether the scope of Plaintiffs' claims require the application of Section 2-622 because Plaintiffs have included enough information within the Amended Complaint to determine the issue. Therefore, Plaintiffs' arguments related to the posterity of the Motions for Partial Summary Judgment are denied, and the Court's analysis continues.

The Court will first address whether the Illinois statute applies to each claim. To determine whether the cause of action alleges medical malpractice, and is therefore covered by this statute, courts analyze three factors: " '(1) whether the standard of care involves procedures not within the grasp of the ordinary lay juror; (2) whether the activity is inherently one of medical judgment; and (3) the type of evidence that will be necessary to establish plaintiff['s] case.' " *Sauer v. Methodist Hosp. of Chi.*, No. 14-CV-7191, 2015 WL 5163680, at *2 (N.D. Ill. Sept. 1, 2015) (quoting *Jackson v. Chicago Classic Janitorial & Cleaning Serv., Inc.*, 355 Ill. App. 3d 906, 909 (1st Dist. 2005)). *See also Fiala v. Bickford Sr. Living Grp., LLC*, 2015 IL App (2d) 150067, ¶ 28 (writing whether Section 2-622 applies depends "on whether the conduct is beyond the ken of a layperson and requires a medical expert's opinion to help the jurors understand"); *Childs v. Pinnacle Health Care, LLC*, 399 Ill. App. 3d 167, 183 (Ill. 2010) (holding that where the allegations "encompass matters of medical

judgment[,] they are appropriately addressed as healing art malpractice" and fall under the statute).

A. *Negligence (Count XI)*

Despite the label indicating that Count XI is a claim of ordinary negligence, Dr. Petrak and OSF argue that it essentially alleges *medical* negligence, and failure to correctly identify it should not allow Plaintiffs to bypass the requirements of Section 2-622. (Docs. 82 at 5–9, 105 at 6–7). By alleging the standard of care for a similarly situated physician, how Dr. Petrak deviated from this standard, and what injuries were proximately caused by her purported negligence, Plaintiffs have pleaded the requisite elements to state a claim for medical negligence. *See Thomason v. Dallison*, No. 22-CV-00834, 2022 WL 2866716, at *4 (S.D. Ill. July 21, 2022) ("An Illinois medical negligence claim requires the plaintiff to show: (1) the applicable standard of care; (2) the defendant breached the standard of care and was negligent; and (3) and the breach was a proximate cause of the plaintiff's injury.").

However, not all medical negligence cases require the plaintiff to use expert testimony to establish a standard of care and therefore do not automatically fall under "healing art malpractice." *See Edelin v. Westlake Cmty. Hosp.*, 157 Ill. App. 3d 857, 862 (1st Dist. 1987) ("Generally, in a medical malpractice case, plaintiff must offer expert testimony to establish the standard of care unless defendant's conduct is so grossly negligent or the treatment so common that a lay person could readily understand it."). Plaintiffs' responsive argument is just that—Dr. Petrak's actions were so grossly negligent that any juror would be able to understand how they did

31

not comport to the standard of care, and will not need expert testimony or fall under Section 2-622. (Docs. 107 at 4–9, 94 at 3–6).

In reviewing the Amended Complaint, it is observed that Plaintiffs do not allege that Dr. Petrak simply breached an administrative duty, or that she failed to follow a hospital policy that is understandable by a layperson. *See Cohen v. Smith*, 269 Ill. App. 3d 1087, 1091–92 (5th Dist. 1995) (finding nonconsensual touching by nurse not "healing art malpractice"); *Edelin*, 157 Ill. App. 3d at 857 (failing to follow hospital policy requiring patients to be escorted from the property in a wheelchair not captured under "healing arts malpractice"). Instead, they allege in Count XI that she did not "apply the knowledge and use the skill and care ordinarily used by a reasonably careful physician" in investigating for abuse and neglect of the minor children, directing the removal of the minor children, and misstating facts related to the investigation. (Doc. 75 at 37). A claim for healing arts malpractice is found "when a professional applies his expert knowledge or skill in an unreasonably deficient way resulting in injury." *Awalt v. Marketti*, 11 C 6142, 2012 WL 1161500, at *4 (N.D. Ill. Apr. 9, 2012) (citing *Purtill v. Hess*, 111 Ill. 2d 229, 239 (Ill. 1986)). Simply put, Plaintiffs are bringing this claim in a way that requires the analysis of whether Dr. Petrak applied her expert knowledge in child abuse investigations and her skills as a medical professional in a deficit way; therefore, it is considered healing acts malpractice and subject to the requirements of Section 2-622.

32

### B.    Informed Consent (Count XII)

Dr. Petrak and OSF move for summary judgment on Plaintiffs' informed consent claim due to their failure to comply with the express language of the statute, which provides:

> When the attorney intends to rely on the doctrine of failure to inform of the consequences of the procedure, the attorney shall certify upon the filing of the complaint that the reviewing health professional has, after reviewing the medical record and other relevant materials involved in the particular action, concluded that a reasonable health professional would have informed the patient of the consequences of the procedure.

5/2-622(d). S*ee also McDonald v. Lipov*, 2014 IL App (2d) 130401, ¶ 18 ("It is well established that a claim that a health professional acted without the informed consent of the patient is a type of medical malpractice claim.").

There are no direct arguments in response by Plaintiffs related to their informed consent claim. As a general argument opposing the application of Section 2-622 to all her claims, Plaintiffs put forth that they will not need expert evidence, as "[t]he expectation of honesty and mutual understanding are basic components of all agreements, including those between patient and provider" and any juror can grasp this concept. (Doc. 107 at 6). This is not enough to defeat the express statutory language that brings this type of claim into what is covered by Section 2-622. This informed consent claim is clearly subject to the requirements.

### C.    Battery (Count XIII)

Both Dr. Petrak and OSF argue that Plaintiffs' battery claim falls squarely under what is subject to the requirements of Section 2-622. Under Illinois law, a battery is the unauthorized touching of the person of another. *Curtis v. Jaskey*, 326

Ill. App. 3d 90, 92 (2d Dist. 2001). In a medical battery case, a plaintiff may recover for a medical battery if he or she shows "a total lack of consent to the procedure performed, that the treatment was contrary to the patient's will, or that the treatment was at substantial variance with the consent granted." *Id*. In response, Plaintiffs contend that Dr. Petrak only makes this argument "because she is a licensed medical doctor and her acts occurred in a hospital," and their allegations that there was "offensive touching by an individual who was not a treater, but instead acting for the state as an investigator, and under a false and incomplete disclosure of the nature of her role" should be determinative in the Court's analysis. (Doc. 107 at 7).

It is correct that not every act or omission committed by a physician or hospital constitutes healing art malpractice and falls under the requirements of Section 2-622. *Milos v. Hall,* 325 Ill. App. 3d 180, 183 (5th Dist. 2001). Claims of medical battery are subject to the requirements only where the underlying nature of the claim sounds in medical healing art malpractice, and generally "if the allegations contained in the plaintiff's complaint involve issues of medical diagnoses, skill, knowledge, or treatment" that is beyond what an average juror may understand. *Ripes v. Schlechter*, 2017 IL App (1st) 161026, ¶ 6.

As previously discussed in relation to Dr. Petrak's Motion to Dismiss, Plaintiffs here are not alleging a "total lack of consent" in bringing this type of claim, or even that the treatment performed went beyond the scope of the consent given. What they allege is that Dr. Petrak failed to disclose her "true motive" in evaluating and

34

assessing BB, which requires the analysis of whether her medical judgment and decisions were sound. Dr. Petrak correctly argues that this case is unique in it that will require the "determination of the standard of care in the context of a child abuse investigation" especially considering how obtaining consent from Plaintiffs might neutralize the purpose of the investigation, and possibly jeopardize the safety of the minor. (Doc. 105 at 9–10). This decision-making falls outside the scope of what a layperson may understand, requires expert testimony, and is therefore subject to the requirements of Section 2-622.

Plaintiffs' cited authority does not change this. Both cases turn on issues that are not present here. *See, e.g.*, *Cohen,* 269 Ill. App. 3d at 1087; *Fiala*, 2015 IL App (2d) 150067. In *Cohen*, the plaintiff pleaded a refusal to medical treatment that conflicted with her religious beliefs, and in *Fiala*, the plaintiff alleged a complete and total lack of consent to the treatment. *Id*. The plaintiffs in these cases did not need to comply with the requirements of Section 2-622 because a juror can more readily understand the black and white nature of pleading a complete lack of consent or right to refuse treatment. That is not the case here, where the battery claim boils down to whether Dr. Petrak used sound judgment, which is essentially medical malpractice. *See Ripes*, 2017 IL App (1st) 161026 at ¶ 14 ("Accordingly, courts that have applied this rule to various pleadings have concluded that claims for breach of contract, fraud, and medical battery will be subject to section 2–622's pleading requirements where the underlying nature of those claims sound in medical healing art malpractice.").

35

For the reasons explained, Plaintiffs' battery claim is subject to the requirements of Section 2-622.

### D.   *False Imprisonment (Count XXIV)*

The false imprisonment claim is leveled against Dr. Petrak and OSF, both of which argue that this count alleges medical malpractice. Under Illinois law, " '[t]he elements of a cause of action for false imprisonment are that the plaintiff was restrained or arrested by the defendant, and the defendant acted without reasonable grounds to believe that an offense was committed by the plaintiff.' " *Molina v. Latronico*, 430 F. Supp. 3d 420, 438 (N.D. Ill. 2019) (quotation omitted).

Illinois courts give a broad reading to the statutory phrase "healing art malpractice." *See Woodard v. Krans*, 234 Ill. App. 3d 690 (2d Dist. 1992). The statute applies if the claim involves the exercise of medical judgment, even if it is not a medical malpractice claim. *See Campolattara v. Feliciano*, 2016 IL App (3d) 141005-U, ¶ 20 (2016) ("[P]laintiff's amended complaint alleged claims of false imprisonment against each of the defendants. Although he does not allege medical malpractice, his claims concern issues of medical judgment, and therefore, fall under the purview of section 2-622(a)."). Here, to establish their claim for false imprisonment, Plaintiffs must plead and prove that Dr. Petrak's finding of medical child abuse was unwarranted, and that her professional determination was not grounded in sound judgment when she "directed the detainment of BB and the removal of Plaintiffs Jacob and Patti from OSF." (Doc. 75 at 53). This theory, touching on both Dr. Petrak's exercise of judgment as a doctor and as a child abuse investigator, clearly raises issues of medical judgment that are beyond the ken of a layperson.

36

Plaintiffs do not raise a viable argument in response. They state:

> As to the false imprisonment claim, again, the fact that Petrak is a licensed medical doctor does not automatically convert this to a medical malpractice claim. Instead, Petrak's acts must be viewed for what they are, regardless of the location or profession of the actor. Petrak's acts can be compared to those of a police officer or other person cloaked with apparent authority who abuses her position to control and limit the acts of another by virtue of their disparate positions. Just as there would be no certificate of merit required in such a police case, there can be none claimed here.

(Doc. 107 at 7). There is no authority included to support this argument comparing Dr. Petrak's role as a child abuse pediatrician to a police officer, or that in this type of role, she would not be exercising medical judgment. *See Mwangangi v. Nielsen*, 48 F.4th 816, 832 (7th Cir. 2022) ("A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is a good point despite a lack of supporting authority or in the face of contrary authority, forfeits the point."). This argument does not refute the contention that Dr. Petrak's medical judgment is at issue; therefore, this claim falls under the scope of Section 2-622. The Court does not follow the logic of this argument—if Plaintiffs are asking the Court to abandon precedent and ignore the plain statutory language of Section 2-622, it must decline. Because this argument is not properly supported and lacks merit as written, it is rejected.

E.    *Institutional Medical Malpractice (Count XXVI)*

OSF, the sole defendant of Count XXVI, argues that Plaintiffs have failed to supply the required affidavit and reports needed to bring an institutional medical malpractice claim against it. (Doc. 82 at 8–9). Plaintiffs offer no response to this argument for summary judgment other than a general denial that any of the state-

law claims require expert testimony. (*See* doc. 94). Institutional negligence from the violation of the hospital's own duty to care. *See Longnecker v. Loyola Univ. Med. Ctr.*, 383 Ill. App. 3d 874, 885 (1st Dist. 2008) (holding that "a hospital may face liability under two separate and distinct theories: (1) vicarious liability for the medical negligence of its agents or employees; and (2) liability for its own institutional negligence"). Like the other state-law claims, an institutional negligence claim must comply with the requirements in Section 2-622 when the plaintiff alleges medical malpractice. *Ortiz v. United States*, No. 13 C 7626, 2014 WL 642426, at *2 (N.D. Ill. Feb. 19, 2014). Plaintiffs themselves labeled this negligence claim "institutional medical malpractice," (doc. 75 at 55), leaving little to no argument that they are not alleging malpractice on the part of OSF. They include allegations related to a failure to follow hospital standards, assume responsibility, supervise treatment and medical care, and protect patients. (Doc. 75 at 55). The issue of whether OSF met these standards is beyond the knowledge of the average juror and will require expert testimony; this claim is therefore subject to Section 2-622.

In sum, Counts XI, XII, XIII, XXIV, and XXVI contain claims that are subject to the requirements in the Illinois statute.

## IV.   Plaintiffs' Request for Leave to Amend

While the summary judgment motions have been pending before this Court, Plaintiffs moved for leave to file health professional reports "in the interest of eliminating such dispute based on technicality so to move forward with the merits of this case." (Doc. 183). In essence, this is a request to amend their pleading. Dr. Petrak opposes any amendment, details how Plaintiffs' purposed health professional reports

38

fall short of what is required under the statute, and argues for the Motion's denial. (Doc. 195).

Generally, as a case proceeds, a party may amend only with the opposing party's written consent or the court's leave. Fed. R. Civ. P. 15(a)(2). Where the opposing party does not consent to an amendment, the Court will grant leave to amend a complaint when justice so requires. *Id*. Leave may be denied, however, when there is "undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile." *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008). Delay alone is an insufficient basis to deny leave to amend the complaint, "rather, the degree of prejudice to the opposing party is a significant factor in determining whether the lateness of the request ought to bar filing." *Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 792 (7th Cir. 2004).

When the motions for summary judgment were filed by Dr. Petrak and OSF, Plaintiffs were placed on notice of the potential need for an affidavit and report as required by Section 2-622. In the ensuing ten months, Plaintiffs had the opportunity to gather essential information and evidence in order to acquire the affidavit and report. On December 2, 2024, Plaintiffs moved for leave to file two Health Professional Reports, one pertaining to Dr. Petrak's actions, and the other related to OSF's failures, in an effort to meet this requirement under the statute. (Doc. 183). Dr. Petrak picks apart these reports, calling out the insufficiencies. (Doc. 195). This Court agrees—the suggested reports do not meet the requirements of the statute for various reasons.

39

The first and most obvious omission is that there is no proposed attorney affidavit included with either report. Both the attorney affidavit and the physician report are required, and failure to provide either result in dismissal. *See Plummer v. Welborn*, No. 13 C 8253, 2016 WL 2937029, at *5 (N.D. Ill. May 20, 2016) (granting a motion to dismiss where the plaintiff filed a complaint with a physician report but failed to include a separate attorney affidavit). The second reason is because the reports themselves are substantively insufficient and include only conclusory language without explanation. To comply with Section 2-622, the health professional's report is not required to contain specific language that a "reasonable and meritorious cause for filing the action exists." *Hagood v. O'Conner*, 165 Ill. App. 3d 367, 373 (3rd Dist. 1988). A report is sufficient where it states with specificity (1) what the defendant did, (2) the reasons why that activity constituted a breach of the applicable standard of care, and (3) the adverse effects suffered by the plaintiff as a result of the breach. *Mueller v. N. Suburban Clinic, Ltd.*, 299 Ill. App. 3d 568, 576 (1st Dist. 1998). "A generalized conclusion of medical malpractice cannot support the meritoriousness determination." *Moss v. Gibbons*, 180 Ill. App. 3d 632, 638 (4th Dist. 1989).

Here, the suggested reports fail to explain why the alleged actions committed by Dr. Petrak and OSF constitute a breach of the applicable standard of care. The language of the statute includes that "the reviewing health professional has determined in a written report, after a review of the medical record and other relevant material involved in the particular action that there is a reasonable and meritorious

cause for the filing of such action." 5/2-622. The report related to OSF states that the care provided to BB "fell below the minimum standard" and "constituted negligence" in the following ways:

> a. Failed to assume responsibility for the care of its patients including BB;
>
> b. Failed to review and supervise the treatment of its patients including BB;
>
> c. Failed to ensure BB was protected from unwanted touching;
>
> d. Failed to supervise the medical care provided to BB;
>
> e. Failed to ensure adequate communication between its medical team.

(Doc. 183-1 at 1–2). Dr. Petrak's actions fell below the required standard of care and constituted negligence because she:

> a. Failed to conduct a thorough and appropriate investigation into the health, safety, and welfare of BB;
>
> b. Conducted an examination, surveillance, and/or touching of BB without consent;
>
> c. Omitted and/or allowed information to be omitted or otherwise allowed inaccurate reports.

(Doc. 183-1 at 3–4). While a report need not state what care should have been provided, *Neuman v. Burstein*, 230 Ill. App. 3d 33 (2d Dist. 1992), it should be supported by facts, *Mueller*, 299 Ill. App. 3d at 577. The reports, and these conclusions of misconduct, are devoid of any factual support from the reviewed materials. For example, looking at the alleged negligence of Dr. Petrak, there are no details to demonstrate when she "allowed inaccurate reports" or provided care without consent. Considering the allegations against OSF, there is no supporting evidence or details related to its failure to supervise, or ensure adequate communication, other than it

41

should have done so "at all times." (Doc. 183-1 at 1). That is not enough to provide that there is a reasonable and meritorious cause for filing these claims. *See McDonald v. Obaisi*, No. 16 C 5417, 2018 WL 1156243, at *5 (N.D. Ill. Mar. 2, 2018) (rejecting a report when it failed to explain how and why alleged failure violated the standard of care). Also, these statements related to the negligent actions of both OSF and Dr. Petrak border on allegations of liability, which are conclusions of law and "a physician is not required to opine on legal conclusions in a physician report." *Delgado v. United States*, No. 16 C 1899, 2016 WL 7324590, at *5 (N.D. Ill. Dec. 16, 2016).

Further, at the time Plaintiffs attempted to supplement their pleading, depositions of numerous medical doctors were already taken in this matter; however, the reports do not mention that any records beyond the minor Plaintiffs' medical records were reviewed. This is generally considered "relevant material" to be reviewed under Section 2-622. *See Kuzmiak v. Kooperman*, 2015 IL App (1st) 142165-U, ¶ 25 ("We find that the depositions of the parties, especially the defendants, and the treating physicians, would have been 'relevant material' under section 2–622(a) of the Code that a health professional should have reviewed prior to authoring 2–622 reports."). The substance of the reports does not come close to meeting the requirements of Section 2-622 or what is accepted in relevant case law.

The third reason is that Plaintiffs fail to establish that the physicians are qualified to provide the opinions rendered. Both suggested reports state that the physician has "practiced within the last 6 years in the same area of health care or medicine that is at issue in this particular action and/or have taught within the last

42

6 years." (Doc. 183-1). This is not enough to provide the defendants notice of the qualifications of the reviewing physician and does not establish "the 'author' of the report . . . [has the] requisite qualifications to express an opinion." *Moyer v. Southern Illinois Hosp. Serv. Corp.*, 327 Ill. App. 3d 889, 897 (5th Dist. 2002). A plaintiff must demonstrate that the physician authoring the report is qualified to do so.

Therefore, Plaintiffs are not granted leave to file these health professional's reports, as this amendment would be futile. The Motion (doc. 183) is denied. The question of whether Plaintiffs should be granted more time to meet the requirements of the statute, or whether summary judgment should be granted for Dr. Petrak and OSF on these counts, must be decided. A main consideration is whether Plaintiffs were truly on notice of the requirement to provide an affidavit or report pursuant to Section 2-622, as they argued that each claim was not actually subject to the statute when faced with the Motions for Partial Summary Judgment. Plaintiffs not having true notice of the requirement may negate granting summary judgment for Defendants, and instead, would suggest that it is more appropriate given the relevant case law to provide Plaintiffs with the time to cure the defect. However, the Court has thoroughly reviewed the progression of this case, and concludes that Plaintiffs had adequate notice, whether they knew or should have known, that their claims were subject to the requirements in Section 2-622 from at least March 20, 2024.

There are two main considerations for this decision: first, in response to the summary judgment motions, Plaintiffs have put forth arguments that are clearly contradictory to established case law, and have wasted the Court's time and resources

by denying that the statute applied to their allegations—especially when considering their informed consent and institutional medical malpractice claims. Plaintiffs did not provide a responsive argument as to why these claims specifically were not subject to the statute, ignoring in part the plain language of the statute. Second, Plaintiffs asked this Court to grant them time to file the necessary reports, and then moved for leave to amend. In the Motion, Plaintiffs do not state that they were not able to gather sufficient evidence to properly draft an affidavit and reports necessary to meet the requirements under Section 2-622. They instead attempt to file a supplement that does not come close to satisfying this burden, purporting that they are now in compliance without a second thought.

Allowing Plaintiffs to continue would prejudice Dr. Petrak and OSF in that they would have to continue defending claims that Plaintiffs seemingly cannot gather the necessary evidence to bring. This would be in direct contrast to the purpose of Section 2-622 and the Illinois Healing Arts Malpractice statute. *See Sullivan v. Edward Hospital*, 209 Ill. 2d 100, 116–17 (2004) (writing that the sets forth pleading requirements that are "designed to reduce the number of frivolous medical malpractice lawsuits at an early stage before litigation expenses mount"). The Seventh Circuit has instructed:

> [W]hile the decision to dismiss . . . is left to the sound discretion of the court, *see McCastle*, 117 Ill.Dec. 132, 520 N.E.2d at 295, Illinois courts have held that when a plaintiff fails to attach a certificate and report, then "a sound exercise of discretion mandates that [the plaintiff] be at least afforded an opportunity to amend her complaint to comply with section 2–622 before her action is dismissed with prejudice." *Cammon*, 235 Ill.Dec. 158, 704 N.E.2d at 739; *see also Apa v. Rotman*, 288 Ill.App.3d 585, 223 Ill.Dec. 851, 680 N.E.2d 801, 804 (1997). It follows

> that when the certificate was filed but failed in some technical or minor respect, sound discretion also requires an opportunity to amend. *See Apa*, 223 Ill.Dec. 851, 680 N.E.2d at 804 (holding that "the technical requirements of the statute should not be mechanically applied to deprive a plaintiff of his substantive rights.").

*Sherrod v. Lingle*, 223 F.3d 605, 614 (7th Cir. 2000). Illinois courts have more recently directed that "a medical malpractice plaintiff should be afforded every reasonable opportunity to establish his case," and that an "abuse of discretion occurs when the court's ruling is arbitrary, fanciful, or unreasonable, or when no reasonable person would take the same view." *Langston v. Catt*, 2024 IL App (4th) 230736-U, ¶ 49 (citations and internal quotation marks omitted).

Here, the attempt to supplement was obviously insufficient, and Plaintiffs have put forth arguments that are plainly meritless in response to the partial summary judgment motions. In other words, Plaintiffs have not simply failed in some "technical" or "minor" respect, but in significant ways that border on bad faith. Another opportunity to establish the case would be unreasonable, and Defendants Dr. Petrak and OSF would be greatly prejudiced if the Court allowed Plaintiffs more time to comply with the requirement they knew or should have known about for almost one year. For these reasons, Plaintiffs are not entitled to another opportunity to comply with the requirements of Section 2-622. *See Hill v. C.R. Bard, Inc.*, 582 F. Supp. 2d 1041, 1051 (C.D. Ill. 2008) (denying the plaintiff more time to meet Section 2-622 requirements because the plaintiff should have known, from the outset, that it would need to comply with the state law). Defendants Dr. Petrak and OSF are granted summary judgment on Counts XI, XII, XIII, and XXIV, and OSF is granted summary judgment on Count XXVI.

## V.    Remaining Arguments in OSF's Motion for Summary Judgment

OSF requests summary judgment on Plaintiffs' claims of intentional infliction of emotional distress in Count X, negligence in Count XI, lack of informed consent in Count XII, battery in Count XIII, false imprisonment in Count XXIV, malicious prosecution in Count XXV, institutional medical malpractice in Count XXVI, and fraudulent concealment or misrepresentation in Count XXVII because there is no agency relationship between OSF and Dr. Petrak. (Doc. 82 at 2). OSF then contends that federal law on medical records preempts Plaintiffs' state law claims seeking declaratory relief in Count VII and injunctive relief in Count VIII. (Doc. 82 at 2). Both arguments will be addressed in turn.[7]

### A.    Agency

Under Illinois law, a principal may be liable for the medical negligence of its actual or apparent agents. *See Wilson v. Edward Hosp.*, 2012 IL 112898, ¶ 18. Whether an agency relationship exists is typically a question of fact; however, "a court may decide this issue as a matter of law if only one conclusion may be drawn from

---

[7] Plaintiffs are warned that a response should comply with the District's Local Rules. They failed to indicate which of Defendant OSF's facts were material or disputed under the correct headings. *See* Local Rule 7.1(D)(2)(b) ("In separate subsections state the following . . . Undisputed Material facts . . . Disputed Material Facts . . . Disputed Immaterial Facts . . . [and] Undisputed Immaterial Facts."). Within the Seventh Circuit, district courts are entitled to strictly, but reasonably, enforce local rules. *See Igasaki v. Illinois Dept. of Fin. and Prof. Reg.*, 988 F.3d 948, 957 (7th Cir. 2021). In their Response, Plaintiffs write that Fact Number 3 is objected to "because it states and calls for a legal conclusion" and that Fact Numbers 4 and 5 are "unsupported by the citations." Neither of these statements inform the Court whether the facts are disputed or material; however, Plaintiffs title their section "Response to the Undisputed Material Facts." Thus, all of Defendant OSF's facts within the Motion for Partial Summary Judgment will be deemed admitted.

the undisputed facts." *Churkey v. Rustia*, 329 Ill. App. 3d 239, 243 (2d Dist. 2002). Plaintiffs bear the burden of establishing an agency relationship. *Pyskaty v. Oyama*, 266 Ill. App. 3d 801, 824 (1st Dist. 1994). But on summary judgment, it is OSF that must show that there is no triable issue on that question. *Winter v. Minn. Mut. Life Ins. Co.*, 199 F.3d 399, 408 (7th Cir. 1999).

OSF argues that summary judgment is appropriate because Dr. Petrak is neither its actual agent nor its apparent agent. (Doc. 82 at 9–12). In denying Dr. Petrak is an actual agent of the hospital, OSF points to an agreement between the University of Illinois College of Medicine at Peoria ("UICOMP") and OSF that plainly outlines how Dr. Petrak is an independent contractor and neither an employee nor agent of OSF. (Doc. 82-2). This fact is undisputed by Plaintiffs; in other words, it is undisputed that Dr. Petrak was employed by and hired by UICOMP, and, therefore, not the actual agent of OSF. *See Heubner v. Galesburg Cottage Hospital*, 215 Ill. App. 3d 129, 132 (3d Dist. 1991) (noting that the dominant factors in determining whether a physician was the actual agent of a hospital are whether hospital paid and employed the physician and, ultimately, retained control over the physician). Presented with these admitted facts, no reasonable jury could conclude that Dr. Petrak was an actual agent of OSF.

The Federal Rules of Civil Procedure require parties to "identif[y] each claim or defense—or the part of each claim or defense—on which summary judgment is sought" Fed. R. Civ. P. 56(a), and, "[a]t the summary-judgment stage, the court can properly narrow the individual factual issues for trial by identifying the material

47

disputes of fact that continue to exist," *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015). Therefore, summary judgment is granted in favor of OSF on the issue of actual agency.

The finding that Dr. Petrak was not an actual agent of OSF does not disclose the possibility that there is apparent agency. Most of Plaintiffs' arguments are related to this theory, which put forth that there are triable issues related to whether Plaintiffs Patti and Jacob Krueger knew or should have known that Dr. Petrak was an independent contractor—the relevant inquiry in determining whether apparent authority exists. (Docs. 94, 199). OSF introduces the consent form which Plaintiffs signed, explaining the use of independent physicians in the hospital. (Doc. 82 at 4–5). There is no dispute that Plaintiff Patti Krueger signed this form—based on this, OSF argues then that Plaintiffs knew or should have known that Dr. Petrak was an independent contractor and the theory of apparent authority cannot apply here. (Doc. 82 at 9).

Where a physician is an independent contractor, and not the actual agent or employee of a principal, the principal may still be held vicariously liable for the physician's negligent acts under the doctrine of apparent authority. *See Lamb-Rosenfeldt v. Burke Med. Grp., Ltd.*, 2012 IL App (1st) 101558, ¶ 24–25. To prevail on a summary judgment motion, Defendant OSF must show that there is no genuine or material dispute on both the "holding out" and "justifiable reliance" elements of an apparent authority theory. *See Gilbert v. Sycamore Municipal Hospital*, 156 Ill. 2d 511, 525 (Ill. 1993).

48

The "holding out" element requires proof that the hospital, or its agent, acted in a manner that would lead a reasonable person to conclude that the physician who was alleged to be negligent was an agent or employee of the hospital. *Gilbert*, 156 Ill. 2d at 523–26. This element "is satisfied if the hospital holds itself out as a provider of care without informing the patient that the care is provided by independent contractors." *Yarbrough v. Nw. Mem'l Hosp.*, 2017 IL 121367, ¶ 30. "If a patient knows, or should have known, that the treating physician is an independent contractor, then the hospital will not be liable." *Gilbert,* 156 Ill. 2d at 522. *See also Petrovich v. Share Health Plan of Ill., Inc.*, 188 Ill. 2d 17, 34 (Ill. 1999) ("Vicarious liability under the apparent authority doctrine will not attach, however, if the patient knew or should have known that the physician providing treatment is an independent contractor."). The form signed by Plaintiff Patti included a provision that read, as follows:

> 3. **Independent Healthcare Practitioners.** I understand and acknowledge that most physicians, mid-level providers and allied health professionals ("healthcare practitioners") providing services at Hospital are **INDEPENDENT HEALTHCARE PRACTITIONERS who are not employees of the Hospital.** These healthcare practitioners are independent contractors who are not employees or agents of Hospital, and Hospital is not responsible for their opinions, decisions or medical procedures performed. Independent physicians include, but are not limited to, consultants and specialists. I also understand that the healthcare practitioners who provide the following services may not be employees or agents of Hospital: surgery, anesthesiology, pathology, radiology, orthopedic surgery, cardiology, hospitalist services, intensivist services, and emergency medicine. I understand that Hospital may be a teaching institution, providing clinical training opportunities for medical, nursing and allied health students and residents. I consent to such students and residents being involved in my care and treatment. ***THE EMPLOYMENT OR AGENCY STATUS OF PHYSICIANS, MID-LEVEL PROVIDERS, AND ALLIED HEALTH***

> **PROFESSIONALS WHO TREAT ME WHILE AT HOSPITAL IS NOT RELEVANT TO MY SELECTION OF THIS OSF HOSPITAL FOR MY CARE.** I understand that professional personnel are available to explain this section to me.

(Doc. 82 at 4–5) (emphasis in original). To evaluate whether this consent form provision provided Plaintiffs with sufficient notification of Dr. Petrak's independent contractor status, the Court reviewed the analysis in *Kaepplinger v. Michelotti*, No. 17 C 5847, 2019 WL 3024633, at *7 (N.D. Ill. July 9, 2019). There, the consent form was found to be ambiguous in that "a jury may reasonably conclude that the form failed to adequately inform a patient of her doctor's independent contractor status" when it included language that physicians "may or may not be employees or agents" of the hospital. *Id.* at *7. The form listed types of doctors that may be independent contractors, but the doctor at issue in *Kaepplinger* did not fall within the listed categories. *Id.* at *7–8.

The same is true here: the form indicates only that "most" physicians are not employed directly by the hospital, and Dr. Petrak, a pediatrician, does not directly fall within the categories of physicians listed in this provision. This consent form, by itself, does provide unequivocal notice that Dr. Petrak was an independent contractor. *See also Knighten v. United States*, No. 06 C 1318, 2008 WL 5244475 (N.D. Ill. Dec. 16, 2008) (denying summary judgment where consent form at issue stated the patient's attending physician "may or may not be an employee of the hospital"); *Hammer v. Barth*, 2016 IL App (1st) 143066, ¶ 24 (denying summary judgment where consent form stated "that 'some or all of the physicians who provide medical services' at the hospital 'are not employees or agents of the hospital, but rather independent

50

practitioners' " and "that '[n]on-employed physicians may include, but are not limited to, those practicing emergency medicine, trauma, cardiology, obstetrics, surgery, radiology, anesthesia, pathology and other specialties' "); *but see Frezados v. Ingalls Mem'l Hosp.*, 2013 IL App (1st) 121835, ¶ 22 (granting summary judgment on this element where consent form stated—without exception—that physicians providing services to the patient "are not employees, agents or apparent agents of [the hospital] but are independent medical practitioners").

Therefore, whether the consent form adequately informed Plaintiffs of Dr. Petrak's independent contractor status is a triable issue and this alone is enough to prevent granting summary judgment on the issue of apparent authority. *See Kaepplinger*, 2019 WL 3024633 at *8 ("Like the *Hammer* and *Knighten* courts, we find the disclaimer language in the consent forms at issue, which only alerts a patient to the possibility that her physicians are independent contractors, too ambiguous to negate the 'holding out' element as a matter of law."). OSF has failed to demonstrate that there is no triable issue as to the first element of apparent agency.

OSF next contends that Plaintiffs fail to introduce any evidence that Dr. Petrak held herself out as an agent of OSF, and that this failure requires the Court to grant summary judgment in its favor. (Doc. 82 at 11). Plaintiffs respond that there are triable issues regarding the elements of apparent authority (e.g., whether Dr. Petrak was being "held out" as an agent, and whether Plaintiffs sought care from the hospital itself and not only Dr. Petrak). (Doc. 94 at 8). The complicated nature of this analysis is in part due to Plaintiffs' failure to introduce any additional facts to support

51

their argument; instead, they treat this Motion for Partial Summary Judgment akin to a dismissal motion under Rule 12 and point to allegations in the Amended Complaint. (Doc. 94 at 8). If Plaintiffs could not adequately respond to this Motion at the time it was filed, the proper procedure would be to use Federal Rule of Civil Procedure 56(d), which provides the appropriate relief to the non-moving party when a summary judgment motion is filed prior to discovery taking place. (*See* Text Order dated August 26, 2024). Plaintiffs did not utilize this procedure, and OSF now argues that they have waived any argument that more discovery was required to respond. (Doc. 98 at 6).

While this Motion has been pending, both Plaintiffs and Defendant OSF have filed supplemental evidence in support of their respective positions on the issue of agency and responses. The filings have been unnecessarily complicated and burdensome. (*See* docs. 126, 161, 169, 199, 201). The Court allowed the supplements to be filed on the docket. With all filings in front of it, the Court concludes that even if it did consider the supplement put forth by Plaintiffs (doc. 199), and the one submitted by Defendant OSF (doc. 201), or any responsive filings, the outcome is the same. Nothing submitted by either party allows this Court to hold, as a matter of law, that Dr. Petrak was not held out as an apparent agent of OSF, and that there is no triable issue as to this element of apparent agency. For example, Plaintiffs introduce evidence that Dr. Petrak "wears a security badge when working at OSF" with an OSF-related logo, and that she has children admitted at OSF "for her to perform DCFS related medical evaluations." (Doc. 199).

52

OSF, on the other hand, introduces evidence that Dr. Petrak states she is "with the Pediatric Resource Center" when meeting patients, and that this center is not a part of OSF. (Docs. 201, 169 at 4). However, OSF does not introduce evidence that Plaintiffs knew or should have known that the Pediatric Resource Center is not a part of OSF. It instead submits evidence that Dr. Petrak does not have an office at OSF, and that DCFS employees' belief that Dr. Petrak may be an agent of OSF was "based on unsupported speculation." (Doc. 199). None of these statements address the theory of apparent agency or go to whether Plaintiffs knew or should have known that Dr. Petrak was an independent contractor and not an employee of OSF. (Doc. 169). Therefore, the analysis does not change, and summary judgment would be inappropriate.

The Court cannot, as a matter of law, find that Dr. Petrak was not an apparent agent of OSF. As the movant, OSF has the burden of either (1) showing there is an absence of evidence supporting an essential element of Plaintiffs' claims, or (2) presenting affirmative evidence negating an essential element. *See Hummel v. St. Joseph Cnty. Bd. of Com'rs*, 817 F.3d 1010, 1016 (7th Cir. 2016). Here, OSF has not met that burden—it has not negated all triable issues in the record which support a finding of apparent agency. OSF's Motion for Summary Judgment on the issue of apparent agency is denied. Thus, summary judgment is denied for Counts X, XXV, and XXVII, and on all other issues. Summary judgment is granted on the issue of actual agency in favor of OSF.

B.    *Federal Law Preemption*

OSF moves for summary judgment on the declaratory and injunctive relief in Counts VI and VII of Plaintiffs' Amended Complaint. (Doc. 82 at 13). Within those counts, Plaintiffs seek an order correcting the contents of their medical records where the minor children are referred to as "victims of abuse." (Docs. 82 at 12, 94 at 9). OSF's argument is that the Health Insurance Portability and Accountability Act ("HIPAA") provides the procedures for Plaintiffs to address concerns over the contents of the medical records, and that they cannot bypass this federal statute by seeking declaratory or injunctive relief. (Doc. 94 at 12–13). There are no disputed, material facts related to whether the requests are preempted.

OSF correctly points out that the procedures and standards for the amendment of medical records are proscribed by HIPAA, and that generally, state law is preempted by the statute.[8] However, OSF does not put forth a convincing argument as to why this process for amending medical records would entitle it to summary judgment on relief sought by Plaintiffs. It fails to connect the dots as to how preemption of state law could also work to bar the requested relief. While dismissal of this relief may be appropriate, summary judgment can only be granted if the moving party shows that it is entitled to judgment as a matter of law. *See Bank of Com. v. Hoffman*, 829 F.3d 542, 546 (7th Cir. 2016). In other words, OSF might be

---

[8] Under the HIPAA Privacy Rule, patients have a legal right to amend or correct a mistake in his or her medical records. *See* 45 C.F.R. § 164.526. Further, state laws that are contrary to HIPAA generally give way to the federal requirements unless a specific exemption applies. 45 C.F.R. § 160.203.

correct that Plaintiffs are misplaced, and that they should use the procedures under HIPAA, but that does not mean OSF itself prevails.

Upon consideration of Plaintiffs' requests (which are found in Counts VII and VIII), there is no cause of action pleaded related to how or why Plaintiffs would be entitled to correct their medical records. Declaratory and injunctive relief are not causes of action; they are equitable remedies. *Bittman v. Fox*, 107 F. Supp. 3d 896, 905 (N.D. Ill. 2015) ("[A]n injunction is . . . not a separate cause of action."); *Obi v. Chase Home Fin., LLC*, No. 11-CV-3993, 2012 WL 1802450, at *4 (N.D. Ill. May 15, 2012) ("Declaratory relief is a form of remedy a plaintiff may request in his prayer for relief."). The denial of summary judgment does not entitle Plaintiffs to relief or signal that the counts are properly pleaded. Because explanation as to why OSF is entitled to judgment as a matter of law is lacking here, the Court denies granting summary judgment on this issue.

## VI.    Discovery Motions

Dr. Petrak requested this Court to stay all discovery deadlines on January 9, 2025, as the parties were approaching the close of fact discovery, and the claims against each Defendant were not clear. (Doc. 203). This Motion is opposed by Plaintiffs, who argue that the pending dismissal and summary judgment Motions would not have disposed of all their claims, and that discovery should continue, or, in the alternative, be extended. (Doc. 206). As the dispositive motions have been decided, Dr. Petrak's Motion to Stay Discovery is moot. The parties are instructed to file an amended discovery plan within twenty-eight (28) days of the date of this Order.

55

Also pending before the Court is a Motion to Compel Discovery filed by Dr. Petrak. (Doc. 157). Plaintiffs responded (doc. 166), and Magistrate Judge Hawley held a hearing on the dispute and indicated that a written decision would be forthcoming. (Text Order dated November 7, 2024). As Judge Hawley has been appointed to District Court Judge, this Court will analyze the merits of this Motion, having reviewed the briefing in full.

The dispute stems from Plaintiffs' refusal to provide authorization to Decatur Psychological Associates, therefore prohibiting Dr. Petrak from issuing a subpoena for mental health records. (Doc. 157 at 1–2). Plaintiffs ask this Court to limit Dr. Petrak's "fishing expedition" for confidential mental health records by using the "middle ground approach" and considering that Plaintiffs seek only "garden variety damages." (Doc. 166 at 10–11).[9] Much of Plaintiffs' Response details the actions Dr. Petrak took during the DCFS investigation. (*See* doc. 166).

---

[9] Plaintiffs' argument that a "middle ground approach applies" to "garden variety damages" is off base. The undersigned agrees with the analysis found in *Gildwell*:

> Some district courts in this Circuit have ignored the holding in *Oberweis* and applied an exception for "garden variety" emotional distress damages. *See, e.g., Johnston v. Jess*, 2020 WL 3605629, at *4 (W.D. Wis. July 2, 2020). The undersigned, however, does not read such an exception into *Oberweis*. "The rule espoused in *Oberweis* is straightforward and unequivocal." *Taylor v. City of Chicago*, 2016 WL 5404603, at *3 (N.D. Ill. Sept. 28, 2016). "And the *Oberweis* decision tells the district courts precisely when a plaintiff waives the privilege; namely, 'by seeking damages for emotional distress.' " *Laudicina v. City of Crystal Lake*, 328 F.R.D. 510, 516 (N.D. Ill. 2018) (quoting *Taylor*, 2016 WL 5404603, at 3).

*Glidwell v. S. Illinois Hosp. Servs.*, No. 22-1100, 2023 WL 2895147, at *4 (S.D. Ill. Apr. 11, 2023). Therefore, the Court will adhere to the standards outlined in *Oberweis*.

56

"[T]here is a psychotherapist-patient privilege in federal cases," and privileged information is not discoverable. *Doe v. Oberweis Dairy*, 456 F.3d 704, 718 (7th Cir. 2006) (citing *Jaffee v. Redmond*, 518 U.S. 1 (1996)); Fed. R. Civ. P. 26(b)(1). However, this privilege is not absolute—"[i]f a plaintiff by seeking damages for emotional distress places his or her psychological state in issue, the defendant is entitled to discover any records of that state." *Oberweis*, 456 F.3d at 718. As other courts have recognized, the language in *Oberweis* that a "defendant is entitled to discover any records," of a plaintiff's mental health when that plaintiff seeks damages for emotional distress is "broad and sweeping." *Laudicina v. City of Crystal Lake*, 328 F.R.D. 510, 514 (N.D. Ill. 2018) ("[T]he judges on the Seventh Circuit are careful writers: They say what they mean and mean what they say. The broad language hedges no bets.").

In the instant matter, Plaintiffs are bringing a claim of intentional infliction of emotional distress and seeking monetary damages as a result of Dr. Petrak's conduct. Applying *Oberweis*, Dr. Petrak is entitled to access Plaintiffs' mental health records because Plaintiffs have placed their psychological states at issue, and the records are relevant to their claim for damages from emotional distress. This waives the privilege between a psychotherapist and a patient. Dr. Petrak's Motion to Compel Discovery (doc. 157) is granted. Plaintiffs are compelled to produce the required authorization for the release of the mental health records from Decatur Psychological Associates.

## CONCLUSION

IT IS THEREFORE ORDERED that Defendant Petrak's Motion to Dismiss (doc. 79) is GRANTED, and the DCFS Defendants' Motion to Dismiss (doc. 85) is GRANTED in part and DENIED in part. Counts XII, XIII, XXVII, and XXVIII are DISMISSED WITHOUT PREJUDICE. To the extent Plaintiffs intended to allege Count VI again, it is DISMISSED WITH PREJUDICE.

Defendant Petrak's Motion for Partial Summary Judgment (doc. 105) is GRANTED, her Motion to Stay Discovery (doc. 203) is MOOT, and her Motion to Compel Discovery (doc. 157) is GRANTED. Summary judgment is granted as to Counts XI, XII, XIII, and XXIV in favor of Dr. Petrak. OSF's Motion for Partial Summary Judgment (doc. 82) is GRANTED in part and DENIED in part. Summary judgment is granted as to Counts XI, XII, XIII, XXIV, and XXVI in favor of OSF. Summary judgment is granted on the issue of actual agency in favor of OSF, but is denied as to Counts X, XXV, and XXVII, and all other issues.

Plaintiffs' Motion for Leave to Amend (doc. 183) is DENIED for the reasons stated herein. If able to truthfully cure the defects outlined herein, the Court grants leave for Plaintiffs to amend Counts XXVII and XXVIII within fourteen (14) days of the date of this Order. Any other amendments must be made pursuant to Federal Rule of Civil Procedure 15(a). The parties are instructed to file an amended discovery plan within twenty-eight (28) days of the date of this Order; Plaintiffs are compelled

58

to produce the required authorization for the release of the mental health records from Decatur Psychological Associates as discussed.

SO ORDERED.

Entered this 31st day of January 2025.

s/ Joe B. McDade
_____
JOE BILLY McDADE
United States Senior District Judge
