IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| JACOB KRUEGER and PATRICIA KRUEGER, Individually and as the Parents and Next Friends of AA, BB, and CC, | ) ) ) ) |
| Plaintiffs, | ) ) ) |
| vs. | ) Case No.: 22 CV 1016-MMM-RLH ) |
| CHANNING PETRAK, OSF ST FRANCIS MEDICAL CENTER, JENNIFER INNESS, in her individual capacity, ALISA COLLINS, in her individual capacity, KIMBERLY TAYLOR, in her individual capacity, LEANDRA TATE, in her individual capacity, RAELYN GALASSI, in her individual capacity, AUSTIN HADDOCK, in his individual capacity, ANITA PARKER, in her individual capacity, ANGELIQUE MAXWELL, in her individual capacity, LINDSAY HORCHARIK, in her individual capacity, and KIMBERLY WILSON, in her individual capacity, | ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

**PLAINTIFFS' RESPONSE TO DEFENDANT / PETRAK'S OBJECTION TO
MAGISTRATE JUDGE HANNA'S ORDER OF JULY 7, 2025 (DOC. 252)**

I.  INTRODUCTION

Dr. Petrak's objection to Judge Hanna's ruling on AA's medical records should be denied for three reasons. First, Dr. Petrak accepted Judge Hawley's ruling on that issue. Only after new Judges were assigned to this Court did Dr. Petrak seek another bite at the apple. Second, and alternatively, should the Court address the substance of Dr. Petrak's objection, the outcome remains the same. AA's medical records are not relevant to any claims or defenses in this case. Third, AA has not received any mental health treatment while in his parents' custody. As a result, there are no mental health records or authorizations for this Court to compel Plaintiffs to produce or sign respectively.

## II.  PROCEDURAL HISTORY

<u>Plaintiffs' Objection to the Discoverability of AA's Medical Records</u>

Plaintiffs have objected to the discovery of AA's medical records since at least February 2023. (Doc. 168-2). Dr. Petrak did not file a motion concerning that discovery dispute until May 15, 2025. (Doc. 234).

<u>Magistrate Judge Hawley's September 11, 2024, Minute Entry</u>

On September 11, 2024, Magistrate Judge Hawley, now District Judge Hawley, ruled that AA's medical records are not relevant. (Minute Entry dated September 11, 2024). Dr. Petrak accepted that ruling. Dr. Petrak did not file an objection or appeal to the District Judge, nor did she file a motion for Judge Hawley to reconsider his ruling.

<u>Magistrate Judge Hanna's July 7, 2025, Order</u>

After Judge Hawley was appointed as a District Judge, and more than eight (8) months after Judge Hawley ruled that AA's medical records are not discoverable, Dr. Petrak filed a motion regarding a discovery dispute involving AA's medical records. (Doc. 234). Judge Hanna allowed briefing on the issue and upheld Judge Hawley's prior ruling. (Doc. 246). Dr. Petrak filed an objection seeking this Court's review of Judge Hanna's Order. (Doc. 251).

<u>The Discoverability of AA's Medical Records is Neither New nor Unresolved</u>

The discoverability of AA's medical records and the tangential issue of potentially impeaching his parents or attacking their credibility based on third-party medical records has been exhaustively litigated by the parties and resolved by the Court. (Docs. 87, 132, 138, 150, 153, 157, 158, 166, 234, 235, 236, 242, 243 & 243-1). For the reasons set forth below, Dr. Petrak's objection and appeal should be denied without further briefing and a final case management order should be entered with a firm trial date.

III.    ARGUMENT

**1. This Court should not Rule on an Issue Dr. Petrak Chose not to Litigate for over Two Years**

An unsuccessful movant is allowed to object to a Magistrate Judge's ruling on a referred matter under certain circumstances. Fed.R.Civ.P. 72(a); Civil LR 72.2. There is a requirement in Judge Hanna's Standing Order, that parties must meet and confer before a discovery motion is filed. [1] Section VII of the Standing Order (regarding Discovery Disputes) states, "[f]ailure to confer ***within a reasonable period of time after learning of the dispute*** may be deemed by the Court to constitute a waiver." (Emphasis added). That same admonition was in Magistrate Hawley's Standing Order. (Doc. 39, p. 4). Dr. Petrak violated the letter and spirit of Judge Hanna and Judge Hawley's Standing Orders.

Plaintiffs objected to Dr. Petrak's requests for AA's medical records by at least February 2023. (Doc. 168-2). Dr. Petrak did not file a motion concerning that discovery dispute until May 15, 2025. (Doc. 234). That is more than two (2) years later. Judge Hawley ruled on that motion. Judge Hawley denied the request, finding that AA's medical records were not relevant. (Minute Entry dated September 11, 2024). Judge Hawley's ruling was correct. However, that ruling could be sustained on the additional grounds that Dr. Petrak did not raise the issue for more than 2 years and after a considerable amount of discovery was completed by all parties. Instead of promptly raising the issue, Dr. Petrak proceeded with discovery for more than two years and accepted Judge Hawley's ruling for an additional eight (8) months. Dr. Petrak did not file an objection or an appeal, nor seek reconsideration from Judge Hawley, on this issue.

---

[1] https://www.ilcd.uscourts.gov/sites/ilcd/files/local_rules/STANDING%20ORDER%20IN%20CIVIL%20CASES_Final%20Clean%20%28Revised%202025_06_03%29.pdf

Only after Magistrate Judge Hanna was selected to replace Judge Hawley did Dr. Petrak seek reconsideration. (Doc. 236). Judge Hanna correctly upheld Judge Hawley's ruling. (Doc. 246). That was more than 8 months after Judge Hawley ruled that AA's medical records were not relevant.

Dr. Petrak claims there was new evidence when Dr. Bansal testified in November 2024. However, Dr. Bansal's deposition testimony was not "new evidence". Dr. Bansal saw AA and BB in 2016 and 2017. Dr. Bansal's medical care in 2016 and 2017 is not new evidence. In addition, Dr. Bansal never reported Patti or Jacob for suspected child abuse or neglect. As a mandated reporter, Dr. Bansal was required to report any reasonable suspicion of abuse. Having none, no such report was made. The absence of a reasonable suspicion of abuse from 2016-2017 is not "new evidence" in this case.

Dr. Petrak's litigation of this case after Dr. Bansal's deposition also raises questions about the veracity of her statements that she needs AA's medical records to fairly defend herself in this case. After Dr. Bansal's November 2024 deposition, on January 8, 2025, Dr. Petrak filed a Motion to Stay Discovery Deadlines. Dr. Petrak made several arguments about why additional time would be needed for fact discovery. However, the need to discover AA's medical records was not one of them. (Doc. 203). Thereafter, on February 28, 2025, the parties submitted an Amended Discovery Plan in accordance with the Court's instructions. (Doc. 211). Under that agreed plan, fact discovery closed May 16, 2025. (Doc. 211). Dr. Petrak did not file a motion concerning AA's records until May 15, 2025. (Doc. 232).

Thus, Dr. Petrak's current argument that she needs AA's medical records and that she will be unfairly prejudiced without such records is contrary to her litigation of this case both before and since Dr. Bansal's deposition. Dr. Petrak participated in discovery for over two years without

4

pursuing those records. Then, she waited more than eight months to object to Judge Hawley's ruling that AA's medical records are not relevant. After that, she agreed to a fact discovery date without pursuing AA's records until the day before fact discovery was scheduled to close. That is not the conduct of someone who truly believes they need records to defend themselves. That is the conduct of someone who wants to cause undue delay and avoid trial.

2. **Alternatively, AA's Medical Records are not Relevant to any Claims or Defenses in this Case.**

Dr. Petrak failed to reference any analogous legal authority supporting her relevance argument. While Dr. Petrak referenced three legal authorities in support of her argument that sibling medical records are relevant (Doc. 251 *citing Whitehead v. Bond*, 680 F.3d 919 (7thCir. 2012); *Williamson v. State*, 356 S.W.3d 1, 5 (Tex. App. 2010); *In re KT*, 361 Ill. App. 3d 187 (1st Dist.2005)), none of those cases addressed the discoverability of sibling medical records. That distinguishing factor alone warrants overruling Dr. Petrak's objection.

In addition, none of those cases held that new evidence a defendant chose not to consider during an underlying investigation was relevant in a subsequent case arising out of that same investigation. Plaintiffs served interrogatories on Dr. Petrak. One of them asked if she ever suspected that Patti or Jake had abused or neglected their three children. She answered "Yes". When asked about the factual basis for that suspicion, Dr. Petrak stated as follows, "All medical conclusions and bases for those conclusions can be found in Dr. Petrak's reports dated 3/8/19, 3/29/19 (addendum), 4/1/19 (supplemental report), 4/2/19 (consult), and 5/17/19." (Doc. 168-4). AA's medical records are not mentioned in any of the reports listed by Dr. Petrak. (Doc. 168-5).

Moreover, none of the cases cited by Defendant held that new evidence was admissible when, as here, the State (or the party that contracted with the defendant to investigate in the first place) determined already that there was no abuse or neglect. On March 5, 2019, DCFS Defendant

/ Collins made her final finding regarding the Krueger investigation. Supervisor Collins emphasized Dr. Petrak's lengthy and unproductive investigation, "The child's medical reports were sent to PRC for review and they have been doing ongoing reviews for over 1½years. At this time, there is no medical consistency or response from PRC...At this time, there is no verification of medical issues, risk of harm or medical neglect. This report is being closed out recommended unfounded." (Doc. 168-11). DCFS communicated to Dr. Petrak that it was closing the investigation. Defendant / Inness acknowledged, "[BB] continues to be admitted and treated by doctors which is not the mother's fault." (Id.). Days later, DCFS met with Patti and Jake in person and told them the good news. "[T]he case will finally be closed out as unfounded. Patty was so happy she cried." Co-Defendant / Inness admitted, "The family has followed through with everything needed and [BB] is doing better overall." (Id.). Defendant / Inness' Supervisor included in her case closing note, "The children are assessed safe at case closing." (Id.).

This was ultimately confirmed by the Macon County Court. On March 10, 2020, the Macon County Court, with jurisdiction over the child abuse case, entered an Adjudicatory Order based on a stipulation between Patti, Jake, and the State of Illinois. The stipulation was based on an injurious environment. Specifically, "one of 3 children had serious health issues of undetermined cause. Home was later found to be full of mold within. Child has recovered from most of his issues." (Doc. 94-2). The Order went on to state, "The abuse or neglect was not inflicted by a parent, guardian, or legal custodian." (*Id*.). Thus, to the extent that Dr. Petrak seeks AA's medical records to justify her historic diagnosis of medical child abuse, any such information would be something she ignored while investigating the allegations and, in any event, contrary to the stipulation and judgment entered by the Macon County Court.

Finally, none of the cases Dr. Petrak relies upon allowed discovery where, as here, the investigator admitted she never considered the sibling's medical records in her underlying investigation. At her deposition, Dr. Petrak testified, "I have no knowledge of any child in the family other than [BB]." (Doc. 238-8, p. 30 of 105, ll. 20-22).

### 3. There are no Mental Health Records to Compel

While Dr. Petrak criticizes Judge Hanna's ruling regarding mental health records, that criticism is misplaced. AA has not received any mental health treatment while in his parents' custody. (Supplemental Interrogatory No. 1, attached as Exhibit 1).

## IV.    CONCLUSION

WHEREFORE, Plaintiffs pray for an Order: overruling the objection (Doc. 252) and granting such other and further relief for Plaintiffs as the Court deems appropriate and just.

Respectfully submitted this 4th day of August 2025

By: /s/ Aaron W. Rapier

*One of Plaintiffs' Attorneys*

Rapier Law Firm, PLLC
1770 Park Street, Suite 200
Naperville, IL 60563
(630) 853-9224 (phone)
IL No. 6270472
arapier@rapierlawfirm.com

Julie A. Murphy (ARDC No. 6290303)
**HART MCLAUGHLIN & ELDRIDGE**
One S. Dearborn, Suite 1400
Chicago, IL 60603
(312) 971-9236
jmurphy@hmelegal.com