**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**PEORIA DIVISION**

| | |
|---|---|
| JACOB KRUEGER and PATRICIA KRUEGER, *individually and as the parents and next friends of AA, BB, and CC* )<br><br>Plaintiffs, )<br><br>v. )<br><br>CHANNING PETRAK, *et al.*, )<br><br>Defendants. ) | Case No. 1:22-cv-01016 |

## <u>ORDER AND OPINION</u>

Two motions are before the Court. The first is a Joint Motion for a Pretrial Conference. D. 233. That Motion is GRANTED. A pre-trial conference is set for October 7, 2025, via telephone before United States District Judge Michael M. Mihm. The Court will provide the relevant instructions for attending this conference in a subsequent Order. The parties shall confer and submit a proposed discovery plan by no later than September 29, 2025.

The second motion is Defendant Channing Petrak's objection to the Order of United States Magistrate Judge Ronald L. Hanna entered on July 7, 2025, denying her Motion to Compel Discovery of AA's medical records and mental health records, (D. 235). D. 251. For the reasons set forth below, this Court OVERRULES the objection and AFFIRMS Magistrate Judge Hanna's July 7, 2025, Order, (D. 246).

## I.    FACTUAL BACKGROUND[1]

---

[1] The factual background is taken from Plaintiff's Amended Complaint, (D. 75).

Plaintiffs Jacob and Patti Krueger ("adult Plaintiffs") are the parents of minors AA, BB, and CC. Illinois Department of Children and Family Services ("DCFS") conducted two investigations into adult Plaintiffs. D. 75 at 11. The first investigation began in October 2017.[2] *Id*. During this seventeen-month investigation, DCFS agents investigated adult Plaintiffs regarding allegations of medical care abuse of their children AA and BB.[3] *Id*. at 12. These agents consulted with Dr. Petrak, who made no findings of medical child abuse. *Id*. at 13. On March 7, 2019, DCFS concluded the investigation and determined the allegations were unfounded. *Id*.

March 11, 2019, four days after DCFS closed the first investigation, BB was admitted at Decatur Memorial Hospital for perihilar pneumonia. *Id*. at 14. Over the next few weeks, BB visited the emergency room and his primary care physician with respiratory illness and was hospitalized several times at OSF. *Id*. On March 21, 2019, Dr. Petrak was involved in BB's treatment for dehydration, pneumonia, feeding intolerance, and viral illness. *Id*. On March 29, 2019, adult Plaintiffs were preparing to take BB home from the hospital. *Id*. at 15. On that day, Dr. Petrak informed Plaintiffs that she needed to examine BB prior to his discharge. *Id*. After completing her examination, Dr. Petrak contacted DCFS and made an investigative finding of medical child abuse regarding BB ("March 29 finding"). *Id*. at 16. Based on this report, DCFS took BB into protective custody. *Id*. at 18.

On April 1, 2019, Dr. Petrak submitted a supplemental report to DCFS, which again concluded that adult Plaintiffs had subjected BB to medical care abuse.[4] Plaintiffs allege that this report was a product of Dr. Petrak's selective reading of the medical records from March 9, 2019,

---

[2] The investigation was in response to a report or hotline call made to DCFS. D. 75 at 11. The anonymous caller expressed concern that BB was a victim of medical care abuse. *Id*.

[3] Medical child abuse is the "unnecessary and potentially harmful medical care inflicted upon a child due to a caregiver's overt actions including exaggeration of symptoms, lying about the history or simulating physical findings (fabrication), or intentionally inducing illness in their child. D. 236 at 3 (internal citations and quotations omitted).

[4] In her report, Dr. Petrak concluded that adult Plaintiffs either withheld information or provided inaccurate medical history which caused BB to undergo unnecessary and harmful procedures. D. 75 at 19.

through April 1, 2019. *Id*. at 19. They further claim that Dr. Petrak "cherry-picked entries or falsified statements or evidence to support her trumped-up conclusion of medical child abuse." *Id*. Dr. Petrak's March 29 finding prompted DCFS's second investigation into the adult Plaintiffs. During this second investigation, DCFS also removed AA from adult Plaintiffs' care.

Plaintiffs initiated this lawsuit against Dr. Petrak, as well as certain DCFS agents, pursuant to 42 U.S.C. § 1983, alleging unlawful seizure of AA, BB, and CC in violation of the Fourth Amendment, violations of procedural due process, substantive due process and familial relations under the Fourteenth Amendment, and various related state law claims. D. 75. Plaintiffs allege that Dr. Petrak "was a state actor, serving as a functionary for DCFS" when she "arbitrarily invested the adult Plaintiffs for abuse and neglect of their children, directed the removal of AA, BB, and CC, dismissed and withheld exculpatory evidence, misstated facts she knew would be reported to the Macon County Juvenile Court, and otherwise contributed to the constitutional violations alleged herein." *Id*. at 6. Specifically, Plaintiffs allege that Dr. Petrak "revived the reportedly closed child welfare investigation as a personal vendetta" against the Plaintiffs after a confrontation occurred between Dr. Petrak and one BB's parents and a grandparent during his discharge on March 29, 2019. *Id*. at 32. As a result, Plaintiffs claim that all subsequent investigation into adult Plaintiffs were arbitrary and performed for improper and illegal purposes. *Id.* at 33.

## II.    PROCEDURAL BACKGROUND

On August 30, 2024, Dr. Petrak filed a Motion for a Hearing regarding certain discovery disputes. D. 138. Then United States Magistrate Judge Jonathon E. Hawley, granted the Motion and held a Status Conference on September 11, 2024. [5] At the hearing, Judge Hawley heard

---

[5] Since the pendency of this action Judge Hawley has been appointed District Judge. Prior to that appointment, Judge Hawley oversaw this case in his role as Magistrate Judge. When appointed, the case was reassigned to Judge Hanna.

arguments regarding these discovery disputes, which included Dr. Petrak's request for the medical records of BB's siblings. Judge Hawley denied this request finding that these records were not relevant. Specifically, Judge Hawley noted that "if Dr. Petrak did not rely on AA's medical records when making her [March 29 finding], then those records have no meaningful connection to the case, regardless of the distinction between admissibility and discoverability." D. 236 at 8.

On June 12, 2025, Dr. Petrak filed a Motion to Compel again seeking to obtain AA's medical records. D. 235. On July 7, 2025, United States Magistrate Judge Ronald L. Hanna denied that Motion finding that the medical records of BB's siblings were not relevant. D. 246. In doing so, Judge Hanna reiterated Judge Hawley's prior holding in this case. "Again, the issue here is the information that Dr. Petrak had at the time she made the determination that BB was a victim of medical child abuse." D. 246 at 4. Because Dr. Petrak did not use AA's medical records when determining that BB was a victim of abuse, Judge Hanna denied Dr. Petrak's Motion to Compel. *Id*. Dr. Petrak subsequently filed objections to Judge Hanna's July 7 ruling, which is presently before this Court.

## III.    STANDARD OF REVIEW

A magistrate judge has the authority to adjudicate non-dispositive matters. 28 U.S.C. § 636(b)(1)(A). These matters include "routine discovery motions," such as motions to compel. *SmithKline Beecham Corp. v. Apotex Corp.*, No. 98 C 3952, 2000 WL 1310669, at *2 (N.D. Ill. Sept. 13, 2000). A party may object to a magistrate judge's finding if the objections are filed within fourteen days of the order. Fed. R. Civ. P. 72 (a). When a district court reviews a magistrate judge's ruling, the court may modify or set aside any part of the order that is clearly erroneous or contrary to law. *Id*.; 28 U.S.C. § 636(b)(1)(A). This is an extremely deferential standard of review. *Heartland Recreational Vehicles, LLC v. Forest River, Inc.*, No. 308-CV-00490, 2010 WL 3119487, at *2 (N.D. Ind. Aug. 5, 2010). A district court cannot reverse a ruling "simply because

it would have come to a different conclusion." *Anderson v. City of Bessemer*, 470 U.S. 564, 573 (1985). Reversal is only permitted if the district court "is left with the definite and firm conviction that a mistake has been made." *Weeks v. Samsung Heavy Indust. Co., Ltd.,* 126 F.3d 926, 943 (7th Cir. 1997). When reviewing the prior ruling, the district court may not consider arguments or issues not presented to the magistrate judge. *Heartland, LLC*, 2010 WL 3119487, at *2 (citing *Murr v. United States*, 200 F.3d 895, 902 n. 1 (6thCir. 2000).

## IV.    DISCUSSION

Dr. Petrak challenges two components of Judge Hanna's July 7 Order. First, Dr. Petrak contends that Judge Hanna erred in denying her request for AA's medical records. She contends that these medical records are relevant to the underlying action, namely for impeachment purposes and as evidence of "other acts" under Federal Rule of Evidence 404(b). D. 252 at 4-7. Second, Dr. Petrak challenges Judge Hanna's Order prohibiting discovery of AA's mental health records. According to Dr. Petrak, AA's mental health records are relevant given that Plaintiffs elected to pursue a claim of intentional infliction of emotional distress. *Id*. at 9.

In response, Plaintiffs argue that Dr. Petrak's objection to Judge Hanna's July 7 Order on AA's medical records should be denied for three reasons: (1) it is an untimely challenge of Judge Hawley's September 11, 2024, ruling that AA's medical records were not relevant and Petrak's right to object is now waived; (2) alternatively, if the Court finds the objection is not waived, AA's medical records are not relevant to any claim or defense; and (3) any challenge to the discoverability of AA's mental health records is misplaced given their certification that such records do not exist. (D. 256). The Court will address each of these issues in turn.

A.  <u>Whether Dr. Petrak's Objection is Timely</u>

A party seeking to challenge a magistrate judge's ruling must do so within fourteen days of receiving the order appealed from. Fed. R. Civ. P. 72(a); CDIL L.R. 72.2(A). A party who fails to comply with this deadline waives the right to appeal. *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995). Dr. Petrak filed this challenge on July 21, 2025. It follows then that this challenge is timely if it is in response to Judge Hanna's July 7 Order. It is equally clear that this objection is untimely to the extent it challenges Judge Hawley's September 11 ruling. Thus, the Court must determine which of the two Dr. Petrak is challenging.

Dr. Petrak directs her objection at Judge Hanna's July 7 Order. However, in doing so, she recognizes that Judge Hanna's Order – to the extent it addresses AA's medical records – merely reiterates Judge Hawley's prior ruling, to which she did not object. D. 252 at 5. Instead, she filed a new Motion to Compel on the same issue when the case was reassigned to a new Magistrate Judge. Indeed, Dr. Petrak recognizes this in her most recent Motion to Compel which explicitly sought reconsideration of Judge Hawley's September 11 Order.[6] D. 235 at 8. Judge Hanna declined to do so. Rather, Judge Hanna reiterated the Judge Hawley's prior finding that AA's medical records were not relevant because Dr. Petrak did not use them to conclude that BB was abused. Judge Hanna provided no additional rationale but rather relied solely on Judge Hawley's prior Order. Thus, though Dr. Petrak cites to the July 7 Order, the Court concludes that her objection as to AA's medical records actually challenges the September 11 Order and is therefore, untimely.

Further, to allow Dr. Petrak's objection would frustrate the purpose of Rule 72. This rule aims to prevent a party "from sandbagging the district judge" by failing to object to a magistrate judge's order only to then appeal the district judge's adoption of that ruling. *Otto v. Variable*

---

[6] Dr. Petrak argues that this reconsideration is warranted in light of the recent deposition of Dr. Bansal. D. 236 at 10. However, Dr. Petrak does not rely on this deposition when arguing for reconsideration. *Id.* Instead, she largely points to Dr. Bansal's reports from 2017. *Id.* Because Dr. Petrak's argument relies on evidence that was seemingly available to her when arguing the issue in front on Judge Hawley, her argument is unpersuasive.

*Annuity Life Ins. Co.*, 134 F.3d 841 (7th Cir. 1998). To enable this maneuver would prevent a district judge from relying on the magistrate's order, frustrating the magistrate's role, and resulting in an inefficient use of judicial resources. *Id*. Though the relationship between Judge Hawley and Judge Hanna is not that of a magistrate judge and a district judge, Dr. Petrak's untimely objection implicates the same policy concerns. Dr. Petrak did not challenge Judge Hawley's Order within fourteen days. She cannot now circumvent this requirement by filing the same request in front of a new magistrate judge, hoping to get a different result. Judge Hanna, similar to a district judge, was entitled to rely on Judge Hawley's Order. The present objection not only "sandbags" Judge Hanna but it also requires this Court to rule on an issue which two other judges have already addressed, resulting in an inefficient use of judicial resources. Though the Court could resolve the present objections on this ground alone, out of an abundance of caution, it will also address the substance of Dr. Petrak's objections.

B.  Whether the Magistrate erred in ruling AA's medical records are not discoverable

Even if the Court were to find that Dr. Petrak's objection was timely, it would still refrain from overruling Judge Hanna's decision as to AA's medical records. As discussed, the Court will only modify or set aside a magistrate judge ruling if that order is clearly erroneous or contrary to law. Fed. R. Civ. P. 72. Judge Hanna's July 7 Order regarding AA's medical records is neither.

Federal Rule of Civil Procedure 26 governs the permissible scope of discovery. Though Rule 26(b) provides for broad and extensive pretrial discovery, it is not unlimited. Rather, the parties are only entitled to nonprivileged information "that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Relevancy "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)).

Here, both magistrate judges determined that AA's medical records were not relevant to the underlying claim against Dr. Petrak. Dr. Petrak, for the third time, attempts to argue the opposite. She contends that AA's medical records may indicate that AA was a victim of medical care abuse, making it more likely that adult Plaintiffs inflicted the same abuse on BB. D. 252 at 6. Dr. Petrak's argument reflects a critical misunderstanding of the issue presented in this case. The issue here is not whether adult Plaintiffs engaged in medical care abuse. If it were, AA's medical records would certainly be relevant. *See Williamson v. State*, 356 S.W.3d 1 (Tex. App. 2010). The issue, rather, is whether Dr. Petrak's March 29 finding of abuse was legitimate given the facts known to her at the time. The corresponding discovery must be tailored to that inquiry. [7] AA's medical records, even if they do reveal a pattern of similar abuse, would not aid in Dr. Petrak's defense. Dr. Petrak did not utilize these records when making her March 29 finding. *See* D. 168-5. Thus, she cannot claim that AA's similar pattern of abuse, even if it existed, negates the claim that her March 29 finding was fabricated.

For this reason, Dr. Petrak's attempt to discover AA's medical records as "other acts" evidence under Federal Rule of Evidence 404(b)(2) similarly fails. Any of the adult Plaintiffs' "other acts" would only be only relevant to the extent they legitimatize Dr. Petrak's March 29 finding. However, they cannot do so because Dr. Petrak admits this evidence did not inform her March 29 finding. Accordingly, AA's medical records are not relevant even if they qualify as "other acts" evidence.

---

[7] Dr. Petrak also argues that Judge Hanna's July 7 Order limits discoverable evidence to information Dr. Petrak knew at the time of the March abuse finding. She argues that this may have the effect of excluding BB's medical evidence as well as other expert testimony. First, this argument was not presented to Judge Hanna and thus does not fall within the limited scope of the Court's review. *See Heartland*, 2010 WL 3119487, at *2. Even if it were to consider this issue, it would not lead the Court to an alternate conclusion. Judge Hanna did not impose such a general rule nor does his Order prevent the Court from independently determining the admissibility or discoverability of future evidence under the relevant Federal Rules.

Finally, Dr. Petrak argues that AA's medical records are necessary for purposes of impeachment. She explains she "expects the adult Plaintiffs – if given the opportunity—to portray themselves as ideal parents who would never subject a child to unnecessary and/or dangerous medical care." D. 252 at 6. In the alternative, Dr. Petrak argues that AA's medical records provide "critical context and background information in a case involving medical child abuse." D. 236 at 8. However, DCFS previously determined that adult Plaintiffs did not engage in medical care abuse of AA in its first seventeen-month investigation. In fact, Dr. Petrak herself concluded there was no evidence adult Plaintiffs abused AA previously. It is unclear what "chronological and conceptual void" AA's medical records would address. D. 235 at 13. Thus, Judge Hanna's July 7 Order does not leave the Court "with the definite and firm conviction that a mistake has been made." *Weeks*, 126 F.3d at 943.

    C.  <u>Whether the Magistrate erred in ruling AA's mental health records are not discoverable</u>

Finally, Dr. Petrak also contends that Judge Hanna erred when he ruled that AA's mental health records were not discoverable. In a previous Order, the Court held that the Plaintiffs' mental health records are discoverable given their claims for emotional distress. D. 206 at 57. Plaintiffs, however, certify that such records do not exist as AA did not receive mental health treatment when in adult Plaintiffs' custody. D. 256 at 7. Given that there are no records to discover, Dr. Petrak's objection to Judge Hanna's ruling regarding AA's mental health records is moot.

## V.    CONCLUSION

For the reasons above, Dr. Petrak's objection to Judge Hanna's Order Denying her Motion to Compel AA's medical records is OVERRULED. The Court AFFIRMS Judge Hanna's Order (D. 246). The parties' Joint Motion to Schedule a Pretrial Conference (D. 233) is GRANTED.

ENTERED this 17th day of September 2025.

/s/ Michael M. Mihm
Michael M. Mihm
United States District Judge